**Commonwealth of Massachusetts**
PLYMOUTH SUPERIOR COURT
Case Summary
Civil Docket

### PLCV2004-01452
### Moran v DiPasqua et al

| | | | | | | |
|---|---|---|---|---|---|---|
| File Date | 12/06/2004 | Status | Disposed: transfered to other court (dtrans) | | | |
| Status Date | 01/10/2005 | Session | B - Civil B - CtRm 1 (Plymouth) | | | |
| Origin | 1 | Case Type | E17 - Civil Rights Act (12.011H-1) | | | |
| Lead Case | | Track | A | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Service | 03/06/2005 | Answer | 05/05/2005 | Rule12/19/20 | 05/05/2005 |
| Rule 15 | 03/01/2006 | Discovery | 01/25/2007 | Rule 56 | 03/26/2007 |
| Final PTC | 07/24/2007 | Disposition | 12/06/2007 | Jury Trial | Yes |

| PARTIES |
|---|

**Plaintiff**
Lori Ann  Moran
Active 12/06/2004

**Private Counsel 247930**
Margaret A Ishihara
Fleming & Ishihara
86 Church Street
Mattapoisett, MA 02739
Phone: 508-758-6981
Fax: 508-758-3406
Active 12/06/2004 Notify

**Defendant**
Andrew K  DiPasqua
10 Wenonah Road
Buzzards Bay, MA 02532
Service pending 12/06/2004

**Defendant**
Michael C.  Sandborn
8 Sycamore street
Onset, MA 02558
Service pending 12/06/2004

**Defendant**
William F.  Gay, III
10 pleasant Street
Onset, MA 02558
Service pending 12/06/2004

**Commonwealth of Massachusetts**
PLYMOUTH SUPERIOR COURT
Case Summary
Civil Docket

## PLCV2004-01452
## Moran v DiPasqua et al

**Defendant**
The Onset Fire Department
240 Onset Ave
Onset, MA 02558
Service pending 12/06/2004

| ENTRIES | | |
| --- | --- | --- |

| Date | Paper | Text |
| --- | --- | --- |
| 12/06/2004 | 1.0 | Complaint & civil action cover sheet filed |
| 12/06/2004 | | Origin 1, Type E17, Track A. |
| 01/10/2005 | 2.0 | Case REMOVED this date to US District Court of Massachusetts |
| 01/10/2005 | | Notice sent: Certified copies of instant action sent to John J. Cloherty, III, Pierce, Davis & Perritano, LLP, Ten Winthrop Sq., Boston, MA 02110 |

| EVENTS | | |
| --- | --- | --- |

A TRUE COPY ATTEST

*Francis R. Powers*

CLERK

**RECEIVED**

DEC - 6 2004

PLYMOUTH SUPERIOR COURT

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH DIVISION                         SUPERIOR COURT DEPT.
                                          DOCKET NO. _OL-1452-A_

LORI ANN MORAN, PLAINTIFF VS. ANDREW DISPASQUA, MICHAEL
SANBORN, WILLIAM F. GAY, III, and THE ONSET FIRE DISTRICT,
DEFENDANTS

COMPLAINT AND JURY DEMAND

Allegations of Fact Common to all Claims

1.      The Plaintiff is Lori Ann Moran of Wareham (Onset), Plymouth County,

Massachusetts.

2.      The Defendants are:

        (a)     Andrew K. DiPasqua of 10 Wenonah Road, Wareham (Buzzards Bay),

Plymouth County, Massachusetts (hereinafter sometimes referred to as "DiPasqua");

        (b)     Michael C. Sanborn of 8 Sycamore Street, Wareham (Onset), Plymouth

County, Massachusetts (hereinafter sometimes referred to as "Sanborn");

        (c)     William F. Gay, III of 10 Pleasant Avenue, Wareham (Onset), Plymouth

County, Massachusetts (hereinafter sometimes referred to as "Gay"); and

        (d)     The Onset Fire District, an entity subject to suit with offices at 240 Onset

Avenue, Wareham (Onset), Massachusetts.

        At all times relevant to this Complaint, the defendants have acted under color of

law.

3.      The Onset Fire District operates a water department through its Board of Water

Commissioners.  A full board consists of three commissioners.



FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

DEC - 6 2004

_Cnd R Fowes_
CLERK

1

4.      The Defendant DiPasqua has been a Water Commissioner from May 2004 to the present.  The Defendant DiPasqua was previously elected as Water Commissioner one other time, and he served part of his term.

5.      The Defendant Sanborn as been a Water Commissioner from 1999 to the present.

6.      On or about April 1, 2002, the Plaintiff began working as an office clerk at the Onset Water Department.

7.      The Plaintiff's immediate supervisor was Kathi Semple, the office manager.  Ms. Semple reports to the Defendant Gay.

8.      The Plaintiff performed her job as office clerk well.

9.      During the Winter of 2003, Ms. Semple screamed and swore at the Defendant Gay because the Defendant Gay had called in two water department employees, who are relatives of Semples, to shovel snow.  Ms. Semple thought that the firefighters should shovel the snow since they were around the water department office.  Ms. Semple told the Plaintiff that she had to put the Defendant Gay in his place.

10.     On information and belief no disciplinary action was taken against Ms. Semple arising out of the Winter 2003 incident.

11.     In March 2004, Ms. Semple told the Defendant Gay, "you are nothing but a f _____ liar.

12.     On information and belief no disciplinary action was taken against Ms. Semple arising out of the March 2004 incident.

13.     On or about April 27, 2004, the Defendant Gay referred to the Plaintiff as "she" and "her" even though the Plaintiff was present and could hear the Defendant.  The Defendant Gay used these words in an extremely condescending, manner.  The Plaintiff

2

requested that the Defendant Gay use her name and not the words "she" and "her". The Plaintiff made these requests in a normal speaking voice.

14.     On or about April 28, 2004, the Plaintiff was informed by Ms. Semple that she should not come back to work until May 3, 2004 and that she would receive pay for the time out of work. Ms. Semple stated that she had called the Plaintiff at the Defendant Gay's request. Ms. Semple also told the Plaintiff that there would be a Board of Water Commissioners meeting on April 30, 2004 to clarify the authority of the Superintendent (the Defendant Gay).

15.     On or about April 28, 2004, a letter from the Board of Water Commissioners to Moran was delivered to Moran by a water department employee informing her that she was on administrative leave with pay until the outcome of the April 30, 2004 special meeting .  A copy of that letter is attached as Exhibit "A" to this Complaint.    There was nothing in the letter that specified the reasons that the Plaintiff was placed on administrative leave.  The Plaintiff attempted to find out from former Water Commissioner John Cook the specific reasons that she was placed on administrative leave, and she was told that the Defendant Gay would write up the reasons.

16.     On or about April 29, 2004, the Plaintiff had a letter from the Defendant Gay delivered to her by a water department employee.  This letter informed the Plaintiff that she was on administrative leave for events that occurred on April 27, 2004 and that she was pending for disciplinary action.    There was nothing in the letter that specified the reasons that the Plaintiff was placed on administrative leave.  A copy of this letter is attached as Exhibit "B" to this Complaint.  The Plaintiff again attempted to find out from former Water Commissioner John Cook what the specific reasons were for her being

3

placed on administrative leave but former Water Commissioner Cook did not give her this information.

17. A Special Meeting Notice of the Board of Water Commissioners to take place on April 30, 2004 was posted. A copy of this notice is attached as Exhibit "C" to this Complaint. No mention is made of the Plaintiff in the notice.

18. On or about April 30, 2004, counsel for the Plaintiff faxed a letter of that date to the Board of Water Commissioners asserting the Plaintiff's due process rights and her rights under the Massachusetts Open Meeting Law. A copy of this letter is attached as Exhibit "D" to this Complaint.

19. On or about April 30, 2004, counsel for the Plaintiff faxed a letter of that date to the Defendant Gay requesting the specific charges against her and an opportunity to be heard in order to contest being placed on administrative leave. A copy of this letter is attached as Exhibit "E" to this Complaint.

20. On or about April 30, 2004, a Special Meeting notice was posted for a meeting to take place on May 4, 2004 "to hold a hearing concerning a disciplinary matter of an employee". A copy of the Special Meeting notice is attached as Exhibit "F" to this Complaint. No mention is made of the Plaintiff by name.

21. On or about May 3, 2004, the Onset Water Department Employee's Association, a union to which the Plaintiff belongs, filed a grievance on behalf of the Plaintiff concerning the Plaintiff's administrative leave. A copy of the grievance is attached as Exhibit "G" to this Complaint. Kathi Semple is the shop steward for the union.

22. The last collective bargaining agreement entered into between the Onset Water Department Employee's Association and the defendant Onset Fire District through its

4

Board of Water Commissioners is dated May 15, 2002.    The Defendant Onset Fire

District has not issued any procedures, rules and regulations governing the internal

conduct of the employees included in the Association, a right which the collective

bargaining agreement states has been retained as a management right (Article 2).   A copy

of the collective bargaining agreement is attached as Exhibit "H" to this Complaint.

23.      In a letter dated May 3, 2004, the Plaintiff was informed she was placed on

indefinite administrative leave for alleged insubordination.   A copy of this letter is

attached as Exhibit "I" to this Complaint.   The Plaintiff was continued on indefinite

administrative leave until June 30, 2004, when she was terminated from employment.

24.      On information and belief, on or about May 4, 2004, the Board of Water

Commissioners opened and closed the hearing noticed in the Special Meeting notice

(Exhibit "F") without taking any action.

25.      On June 2, 2004, a meeting of the Onset Board of Water Commissioners took

place.   The purpose of that meeting was to see if a possible resolution could be reached

between the Water Commissioners and the Plaintiff.   The meeting was held in a public

session.   At that meeting, for the first time, the Defendant Gay presented a written

statement dated April 28, 2004 containing his allegations against the Plaintiff for her

purported bad and threatening conduct on April 27, 2004.   A copy of the Defendant

Gay's statement is attached as Exhibit "J" to this Complaint.    In this statement the

Defendant Gay accuses the Plaintiff of threatening him and causing him to be fearful for

his life.    The Defendant Gay also accuses the Plaintiff of making false accusations

against the Defendant Gay and other employees.   No resolution was reached between the

Board of Water Commissioners and the Plaintiff.

26.     In a letter dated June 17, 2004, the Onset Board of Water Commissioners, notified the Plaintiff that they would hold a public meeting on June 30, 2004 to consider disciplinary action against her arising out of her alleged actions on April 27, 2004. A copy of the letter is attached as Exhibit "K" to this Complaint. A copy of the April 28, 2004 statement of the Defendant Gay was attached to the letter. The June 17, 2004 letter specifically stated that the Plaintiff would not be allowed to cross examine or question persons who present oral testimony, and that only the Water Commissioners would be allowed to ask questions of such witnesses.

27.     On or about June 28, 2004, the Plaintiff through her counsel faxed a letter to Attorney Daniel F. Murray, the attorney for the Board of Water Commissioners, objecting to the prohibition against cross examination. A copy of this letter is attached as Exhibit "L" to this Complaint. No response was received from Attorney Murray.

28.     On or about June 29, 2004, Plaintiff through her counsel faxed a letter to Attorney Daniel F. Murray, the attorney for the Board of Water Commissioners, asking for the specific false accusations which the Defendant Gay stated that the Plaintiff made against the Defendant Gay and other employees    A copy of this letter is attached as Exhibit "M" to this Complaint. No response was received from Attorney Murray.

29.     At a public meeting on June 30, 2004, the Defendant Gay made the allegations against the Plaintiff that he had made in the April 28, 2004 letter. Kathi Semple and other Water Department employees also made oral statements, purportedly in support of the Defendant Gay, which in fact were contradictory with the Defendant Gay's allegations. Kathi Semple and the other Water Department employees are close relatives of each other, a fact which was not brought out at the meeting because the Plaintiff was

6

not allowed to cross examine these employees. An additional fact which was not brought out at the meeting was that Kathi Semple had told the Plaintif never to come to Semple again with a problem because the Plaintiff had not supported Kathi Semple in a dispute between Ms. Semple and the Defendant Gay. This fact was not brought out because of the lack of cross examination, and showed the bias of Ms. Semple against the Plaintiff. The Plaintiff denied that she had engaged in the bad and threatening conduct alleged by the Defendant Gay. The Plaintiff was not allowed to cross examine any witnesses. The Defendants Sanborn and DiPasqua made statements at the hearing to the effect that they had to go along with the Water Superintendent. The Defendant DiPasqua made statements outside of the hearing to the effect that he had no choice but to side with the Water Superintendent because the Water Superintendent had all the licenses and that DiPasqua was concerned about the Defendant Gay and the other Water Department employees bringing a lawsuit.

30.    At the public meeting on June 30, 2004, the Defendants DiPasqua and Sanborn voted to terminate the Plaintiff from employment, and because they constituted a majority of the Board of Water Commissioners, the Plaintiff was terminated. The Plaintiff was notified in a letter dated July 1, 2004 that she had been terminated. A copy of the termination letter is attached as Exhibit "N" to this Complaint.

31.    On or about July 2, 2004 the Plaintiff filed a grievance on her termination. A copy of the grievance is attached as Exhibit "O" to this Complaint.

32.    The Plaintiff learned through a posted notice of a meeting that a meeting would take place on Saturday, July 24, 2004 to discuss her grievance.

33.    In a letter dated July 23, 2004, the Plaintiff through counsel, wrote to Daniel F. Murray, the attorney for the Board of Water Commissioners, protesting the lack of notice of the Saturday, July 24, 2004 meeting.

34.    At the July 24, 2004, the Defendants DiPasqua and Sanborn voted to deny the Plaintiff's grievance, and because they constituted a majority of the Board of Water Commissioners the grievance was denied.

35.    The Plaintiff has filed a request for grievance mediation with the Massachusetts Board of Conciliation and Arbitration, and she is awaiting a mediation date.

COUNT ONE DUE PROCESS

36.    The Plaintiff re-alleges paragraphs 1 through 35 as if fully set forth.

37.    The Defendants are:

    (a)    Andrew K. DiPasqua of 10 Wenonah Road, Wareham (Buzzards Bay), Plymouth County, Massachusetts (hereinafter sometimes referred to as "DiPasqua");

    (b)    Michael C. Sanborn of 8 Sycamore Street, Wareham (Onset), Plymouth County, Massachusetts (hereinafter sometimes referred to as "Sanborn"); and

    (c)    William F. Gay, III of 10 Pleasant Avenue, Wareham (Onset), Plymouth County, Massachusetts (hereinafter sometimes referred to as "Gay"); and

    (d)    The Onset Fire District a entity subject to suit with offices at 240 Onset Avenue, Wareham (Onset), Massachusetts.

38.    The statements in the April 28, 2004 statement of the Defendant Gay stigmatized the Plaintiff and seriously damaged or could seriously damage her standing and associations in the community and her ability to obtain other employment. These

statements were disseminated by the Defendants at the public meetings of the Board of Water Commissioners on June 2, 2004 and  June 30, 2004.

39.    The Plaintiff was entitled to a hearing which comported with the requirements of the due process clause of the Fourteenth Amendment to the U.S. Constitution.

40.    The statements of DiPasqua and Sanborn show that they were biased against the Plaintiff,  and that they considered extraneous factors other than the statements and materials presented at the meeting when they made their decision to terminate the Plaintiff.

41.    Because there were no procedures, rules and regulations governing the conduct of water department employees there were no were no clear standards which the defendants were required to observe.

42.    The meeting of the Board of Water Commissioners on June 30, 2004 did not comport with the requirements of the due process clause of the U.S. Constitution because two of the commissioners, DiPasqua and Sanborn, were biased and because the Plaintiff was not allowed to cross examine witnesses.

43.    As a result of the violation of the due process clause of the Fourteenth Amendment to the U.S. Constitution by the Defendants, the Plaintiff has suffered damages including but not limited to termination from employment, loss of  pay and benefits, detrimental effects on her ability to secure other employment, and emotional distress.   This claim is brought pursuant to the provisions of 42 U.S.C. section 1983. Wherefore, the Plaintiff demands judgment in an amount to compensate for her damages, plus interest, costs, attorneys fees, punitive damages, and such other relief as the court deems just.

COUNT TWO EQUAL PROTECTION

44.    The Plaintiff re-alleges paragraphs 1 through 35 as if fully set forth.

45.    The Defendants are:

(a)    Andrew K. DiPasqua of 10 Wenonah Road, Wareham (Buzzards Bay), Plymouth County, Massachusetts (hereinafter sometimes referred to as "DiPasqua");

(b)    Michael C. Sanborn of 8 Sycamore Street, Wareham (Onset), Plymouth County, Massachusetts (hereinafter sometimes referred to as "Sanborn"); and

(c)    William F. Gay, III of 10 Pleasant Avenue, Wareham (Onset), Plymouth County, Massachusetts (hereinafter sometimes referred to as "Gay"); and

(d)    The Onset Fire District a entity subject to suit with offices at 240 Onset Avenue, Wareham (Onset), Massachusetts.

46.    The Plaintiff was similarly situated to Kathi Semple since the Plaintiff had been accused of being insubordinate and threatening to the Defendant Gay, and Ms. Semple had been insubordinate and screamed and swore at the Defendant Gay.   Ms. Semple told the Plaintiff that she had to put the Defendant Gay in his place.

47.    No disciplinary action was taken against Kathi Semple, and the Plaintiff was terminated from employment.

48.    There was no rational basis for the termination of the Plaintiff, and the actions of the defendants were arbitrary, capricious, and/or taken in bad faith.   The Plaintiff was singled out and terminated from employment.

49.    The defendants violated the Plaintiff's rights to equal protection of the law as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

50.    As a result of the violation of the equal protection clause of the Fourteenth

Amendment to the U.S. Constitution by the Defendants, the Plaintiff has suffered

damages including but not limited to termination from employment, loss of pay and

benefits, detrimental effects on her ability to secure other employment, and emotional

distress. This claim is brought pursuant to the provisions of 42 U.S.C. section 1983.

Wherefore, the Plaintiff demands judgment in an amount to compensate for her damages,

plus interest, costs, attorneys fees, punitive damages, and such other relief as the court

deems just.

JURY DEMAND

The Plaintiff demands a trial by jury on all triable issues, and as to those issues

not triable as of right to a jury the Plaintiff requests pursuant to M.R.Civ.P. 39 that the

court frame jury issues.


PLAINTIFF
LORI ANN MORAN
By her Attorney

Margaret A. Ishihara, BBO#247930
Fleming & Ishihara, P.C.
86 Church St.
Mattapoisett, MA. 02739
Telephone (508) 758-6981
Date: 1 December 2004

A TRUE COPY ATTEST

Frank R. Flowers
CLERK

11

*Onset Fire District*
# Onset Water Department
15 SAND POND ROAD
Onset, Massachusetts 02558
Telephone Wareham (508) 295- 0603
FAX (508) 295-0606

Board of Water Commissioners
John Cook/Chairman
Michael Sanborn/Clerk

LORI MORAN:

EFFECTIVE 4/28/04 AT 8:00 A.M. YOU WERE PLACED ON ADMINISTRATIVE LEAVE WITH PAY, UNTIL THE OUTCOME OF THE 4/30/04 SPECIAL MEETING CLARIFYING THE AUTHORITY OF THE SUPERINTENDENT.

AT 7:00 A.M. YOU WERE NOTIFIED NOT TO COME TO WORK ON 4/28/04. AND AT 3:00 P.M. YOU WERE NOTIFIED NOT TO COME BACK TO WORK UNTIL YOU ARE NOTIFIED OF YOUR STATUS ON MONDAY MAY 3, 2004.

FOR THE BOARD OF WATER COMMISSIONERS

WILLIAM F. GAY III
SUPERINTENDENT
APRIL 28, 2004


Exhibit
A

## Onset Fire District
# Board of Water Commissioners

15 SAND POND ROAD
Onset, Massachusetts 02558
Telephone Wareham (508) 295- 0603
FAX (508) 295-0606


JOHN COOK CHAIRMAN
MICHAEL SANBORN/CLERK


LORI MORAN:


YOU ARE ON ADMINISTRATIVE LEAVE FOR EVENTS THAT OCCURRED ON 4 27 04 AND
ARE PENDING FOR DISCIPILNARY ACTION.


WILLIAM F. GAY III
SUPERINTENDENT
APRIL 29, 2004


WG ks


Exhibit
$\mathcal{B}$

# Onset Fire District
# *Board of Water Commissioners*

15 SAND POND ROAD
Onset, Massachusetts 02558
Telephone Wareham (508) 295- 0603
FAX (508) 295-0606

S-5-2004

## SPECIAL MEETING

THE BOARD OF WATER COMMISSIONERS WILL HAVE A SPECIAL MEETING ON APRIL 30, 2004 AT 4:30 P.M.. THE MEETING WILL BE HELD AT THE ONSET WATER DEPARTMENT OFFICE, 15 SAND POND ROAD.

THIS IS TO CLARIFY THE AUTHORITY OF THE SUPERINTENDENT.

POSTING PLACES:

ONSET WATER DEPARTMENT
ONSET FIRE DISTRICT OFFICE
ONSET FIRE DEPARTMENT
ONSET POST OFFICE
WAREHAM TOWN HALL

15 SAND POND ROAD
240 ONSET AVENUE
EAST CENTRAL AVENUE
ONSET AVENUE
MARION ROAD

POSTED: _____

BOARD OF WATER COMMISSIONERS

JOHN COOK CHAIRMAN
MICHAEL SANBORN/CLERK
APRIL 28, 2004

Exhibit
C

**Fleming & Ishihara. P.C.**
**86 Church St.**
**Mattapoisett, MA. 02739**

Donald J. Fleming                                                Margaret A. Ishihara

30 April 2004

Board of Water Commissioners
Onset Fire District
15 Sand Pond Rd.
Onset, MA. 02558

Fax 1 page to 1 508-295-0606

Re:   Lori Moran

Dear Commissioners.

        Please be advised that I represent your employee, Lori Moran.

        Ms. Moran is in receipt of a letter dated April 29, 2004 stating that she was placed
on administrative leave for events that occurred on April 27, 2004 and that disciplinary
action may be considered.   Ms. Moran still has not been advised of the specific charges
against her which led to her administrative leave nor was she given any opportunity to be
heard in order to contest this disciplinary action, which would be required in the interests
of fairness and to meet the requirements of due process of law contained in the U.S.
Constitution and the Massachusetts Declaration of Rights.
        A meeting of the Board of Water Commissioners has been scheduled for this
afternoon purportedly to clarify the authority of the superintendent.   Ms. Moran was not
notified directly of this meeting, but only learned of it through the public posting of the
meeting.   This meeting should not be used as a pretext to discuss my client or any
disciplinary action against her     My client has not been given any notice of specific
charges against her. if any, or any notice and an opportunity to be heard.
        Additionally. if the Board is going to discuss my client in executive session under
the Open Meeting Law, G.L. c. 39:23B, at least 48 hours notice is required.    My client
would then have an opportunity to be present with her attorney.   No such notice has been
given.   If my client is discussed in public session and disparaging remarks are made
about her, we will consider such remarks to be defamatory.
        Also, please consider this letter to be a grievance under the terms of the
Agreement between the Onset Fire District, Water Department and the Onset Water
Department Employee's Association.   Specifically, Ms. Moran claims that Article 7,
Hours of Work has been violated as she has not been allowed to work her regular hours.

Very truly yours,

Margaret A. Ishihara
Sent by priority mail, certified mail return receipt requested no. _7002  3150  4617 9298_

Telephone: **(508) 758-6981**              **e-mail: MLMATTLAW@VERIZON.NET**
Fax: **(508) 758-3406**

Exhibit

D

**Fleming & Ishihara, P.C.**
**86 Church St.**
**Mattapoisett, MA. 02739**

Donald J. Fleming                                                    Margaret A. Ishihara

30 April 2004

William Gay
Water Superintendent
Onset Fire District
15 Sand Pond Rd.
Onset, MA. 02558

Fax 1 page to 1 508-295-0606

Re:   Lori Moran

Dear Mr. Gay:

Please be advised that I represent your employee, Lori Moran.

Ms. Moran is in receipt of a letter dated April 29, 2004 stating that she was placed on administrative leave for events that occurred on April 27, 2004 and that disciplinary action may be considered. Ms. Moran still has not been advised of the specific charges against her which led to her administrative leave nor was she given any opportunity to be heard in order to contest this disciplinary action.

Please consider this letter to be a grievance under the terms of the Agreement between the Onset Fire District, Water Department and the Onset Water Department Employee's Association. Specifically, Ms. Moran claims that Article 7, Hours of Work has been violated as she has not been allowed to work her regular hours.

Very truly yours,

Margaret A. Ishihara
Sent by priority mail, certified mail return receipt requested no. _____

**Telephone: (508) 758-6981**          **e-mail: MLMATTLAW@VERIZON.NET**
**Fax: (508) 758-3406**

Exhibit

E

# Onset Fire District
## Board of Water Commissioners

15 SAND POND ROAD
Onset, Massachusetts 02558
Telephone Wareham (508) 295- 0603
FAX (508) 295-0606


JOHN COOK/CHAIRMAN
MICHAEL SANBORN/CLERK


S-6-2004


### SPECIAL MEETING

THE BOARD OF WATER COMMISSIONERS WILL HOLD A SPECIAL MEETING ON TUESDAY MAY 4, 2004 AT 4:30 P.M., TO HOLD A HEARING CONCERNING A DISCIPLINARY MATTER OF AN EMPLOYEE.

PORTIONS OF THIS MEETING MAY OR MAY NOT BE IN EXECUTIVE SESSION.

THIS MEETING WILL BE HELD AT THE ONSET WATER DEPARTMENT OFFICE, 15 SAND POND ROAD


POSTING PLACES:

ONSET WATER DEPARTMENT OFFICE          15 SAND POND ROAD
ONSET DISTRICT OFFICE                  240 ONSET AVENUE
ONSET FIRE DEPARTMENT                  EAST CENTRAL AVENUE
ONSET POST OFFICE                      ONSET AVENUE
WAREHAM TOWN HALL                      MARION ROAD


BOARD OF WATER COMMISIONERS


JOHN COOK/CHAIRMAN
APRIL 30, 2004


POSTED


Exhibit
F

OWWEA-01

# Onset Water Workers Employee Association
## Grievance Form

Name of Grievant ____ Lori Ann Moran _____    Date  5/3/04

Shift _____

Classification ____ Clerical _____

**Nature of Grievance**

See attached letter from Lori Ann Moran's legal council

**Clause of Contract Violated**

Article 7 - Hours of work

**Settlement Desired**

Meeting Desired  ☒ YES   ☐ NO

Signature of Employee _____

Signature of Union Official ____ Keith Seaple 5/3/04 ____

**Administration Answer**

cc  Board of Water
Commissioners
Superintendent
Shop Steward

Answer Date

Exhibit
G

**Fleming & Ishihara, P.C.**
86 Church St.
Mattapoisett, MA. 02739

Donald J. Fleming

Margaret A. Ishihara

30 April 2004

Kathi Semple
Office Manager/Shop Steward
Onset Water Department
Onset Fire District
15 Sand Pond Rd
Onset, MA. 02558

Fax 1 page to 508-295-0606

Re:   Lori Moran

Dear Ms. Semple:

Please be advised that I represent Lori Moran, an Onset Water Department employee and member of the Onset Water Department Employee's Association

Ms Moran is in receipt of a letter dated April 29, 2004 stating that she was placed on administrative leave for events that occurred on April 27, 2004 and that disciplinary action may be considered. Ms. Moran still has not been advised of the specific charges against her which led to her administrative leave nor was she given any opportunity to be heard in order to contest this disciplinary action

Demand is made for you to present a written grievance under the terms of the Agreement between the Onset Fire District, Water Department and the Onset Water Department Employee's Association on Ms. Moran's behalf. Specifically, Ms Moran claims that Article 7, Hours of Work has been violated as she has not been allowed to work her regular hours.

Very truly yours,

Margaret A. Ishihara

Telephone: (508) 758-6981
Fax: (508) 758-3406

e-mail: MI.MATTLAW@VERIZON.NET

# ORIGINAL

## AGREEMENT

This Agreement, entered into by and between the Onset Fire District, Water Department, hereinafter referred to as the "Employer", and the Onset Water Department Employee's Association, hereinafter referred to as the "Employee's Association", has as its purpose: the promotion of harmonious relations between the Employer and the Employee's Association, the establishment of an equitable and peaceful procedure for the resolution of differences, and the establishment of rates of pay, hours of work, and other conditions of employment.

## ARTICLE 1 - RECOGNITION

A.) This agreement relates to and covers all permanent, full-time employees of the Water Department, including the following:

    1) Equipment Operators
    2) Skilled Laborers
    3) Laborers
    4) Clerical Employees
    5) The Superintendent
    2) The Business Manager
    3) The Foreman

B.) The Employer recognizes the Employee's Assoc. as the sole and exclusive representative for all of its present and future permanent, full-time employees covered by this agreement, now engaged, governing hours of labor, wages, and rates of pay, and other conditions of employment.

C.) The Employer shall not enter into any agreement or contract with its employees, individually or with any officer or representative of the Employee's Assoc., which in any way conflicts with the terms and provisions of this Agreement. Any such agreement or contract shall be considered null and void.

D.) Organizational Activities: Except where prohibited by this agreement, the employees shall have, and be protected in, the exercise of, the right to act as Association representatives, to engage in Assoc. activities for the purpose of collective bargaining. In the exercise of such rights, the employees shall be free from any and all interference, restraint, or coercion and from any discrimination in regard to tenure, promotion, or other conditions of employment. The Association agrees that it shall represent the interest of all employees without discrimination and without regard as to whether an employee is a member of the Association.

**Exhibit**

**H**

## ARTICLE 2 - MANAGEMENT RIGHTS

Except as modified by this Agreement, the rights of the Employer shall be respected at all times and the provisions of this Agreement shall be observed for the orderly settlement of all questions. The Employer shall retain the right to issue procedures, rules and regulations governing the internal conduct of the employees included in the Assoc. and subject to all District By-Laws, Local, State and Federal Laws.

The Employer also retains the right to take whatever action is necessary to insure the protection, health, welfare, and safety of the District generally, or citizens individually.

## ARTICLE 3 - STEWARD

The duly elected or appointed Steward may use reasonable time during his normal working hours to investigate and present legitimate grievances in accordance with the provisions of this Agreement.

The Steward has no authority to take strike action or any other action interrupting the Onset Fire District Water Dept. operations.

The Steward shall be placed on the seniority list as number one employee until such time as he is replaced for any reason, when he will be returned to his original position on the seniority list.

## ARTICLE 4 - ASSOCIATION SECURITY

All present permanent, full-time employees covered by this Agreement as a condition of employment shall become and remain members of the Employee's Association in good standing, on and after the thirty-first (31st) day following the signing of this Agreement. All future permanent, full-time employees covered by this Agreement shall be required to become Assoc. members or pay their commensurate costs of collective bargaining on or after the thirty-first (31st) day following their date of employment. The failure of an employee to comply with this requirement will result in the employees dismissal within thirty (30) days after receipt of written notice to the Employer and the Association.

## ARTICLE 5 - SENIORITY & PROMOTIONS

The length of service in the Onset Fire District Water Department of the permanent full-time employees shall determine seniority. Length of service shall be the total accumulated uninterrupted service with the Water Dept.

Seniority rights accrued to an employee under this article shall be lost in the event of a break in his continuous service caused by one of the following:

CONT - ART 5:

1) Voluntary resignation,
2) Absence from work for three (3) consecutive days without notice to the Employer.
3) Failure to return to work three (3) days after the expiration of any Leave of Absence.
4) Failure to return to work within three (3) days after a registered or certified letter is mailed to the employee at his last known mailing address requesting the employee's return to work. Employees must notify the Employer of his intent to return to work upon receipt of said notice of recall.

The principle of seniority shall govern and control in most cases of promotion within the bargaining unit, transfer, decrease of the working force as well as preference of vacation periods.

A seniority list showing the status of each employee must be posted in a place accessible to the employees. The Assoc. may request, from time to time, a copy of such a list.

## ARTICLE 6 - JOB BIDDING AND POSTING

Any job opening covered by this Agreement shall be filled by employees in order of their seniority provided an employee has the ability and necessary qualifications to perform the work required. If in the Employer's opinion, there is no applicant employee with the necessary qualifications to perform the required work, the Employer may fill the vacancy from outside the bargaining unit.

Job openings shall be posted for a period of five (5) days. All employees shall have an opportunity to apply for promotion. However, until said position is filled, in accordance with the above procedure, the Employer shall have the right to temporarily fill the position as he sees fit.

Any employee bidding for such job may be allowed a thirty (30) day period to see if he is qualified. After the thirty (30) day period, or if in the opinion of the Employer the employee has not performed satisfactorily, he shall be returned to his former position.

## ARTICLE 7 - HOURS OF WORK

A) The regular work week for permanent full-time employees shall be forty (40) hours for the labor force and thirty-seven and one half (37½) hours for the clerical staff, respectively. The regular work day for permanent full-time employees working a regular work week shall be eight (8) hours for the labor force and seven and one half (7½) for the clerical staff, respectively. The regular work week shall consist of five (5) regular days.

B) All hours worked in excess of forty (40) for the labor force and thir~yseven and one half (37½) for the clerical staff in any regular work week shall be paid at the rate of time and one half (1½) the employee's regular straight time hourly rate of pay.

ARTICLE 7 CONT.:

C.)  Employees shall work overtime, when requested, without advance notice should an emergency arise. If an emergency does not exist, an employee shall work overtime when required as long as reasonable notice is given when possible. The Superintendent or other officer of the District shall have the right to determine an emergency.

D.)  Rest Periods: Employees shall be allowed fifteen (15) minute rest periods during each one half shift, on the job site.

E.)  Lunch Periods: Employees shall be granted a meal period of one half ($\frac{1}{2}$) hour duration during the fourth and fifth hour of the work shift. If however, work conditions do not permit a meal period, employees may be granted an additional fifteen (15) minute rest period during the remainder the the work day. Employees who are requested to and work beyond their usual shift shall be granted a reasonable time off, not to exceed one half ($\frac{1}{2}$) hour, to eat with pay, when said work shift is extended at least two hours beyond their normal work day.

## ARTICLE 8 - MILITARY CLAUSE

Employees entering into or enlisting in the military or naval service of the United States, pursuant to the provisions of the Selective Service Act of 1948, shall be granted all rights and privileges provided by the Act.

## ARTICLE 9 - LEAVE OF ABSENCE

Leave of absence, without pay, may be granted upon written request and at the discretion of the Water Department.

If a holiday falls within the leave of absence period, this holiday will not be considered a paid holiday.

## ARTICLE 10 - GROUP INSURANCE PLAN

The Employer shall continue for the duration of this Agreement to provide a group insurance plan on substantially the same basis as present. The Employer shall not itself operate the plan but the insurance company or companies shall administer the benefits, which shall be subject to such conditions and limitations as are provided by the Law and in the applicable insurance policies or contracts. The premiums for such plan shall be paid, at least ninety-nine (99%) percent, by the Dept. Any claim or disputes concerning eligibility for or payment of benefits under this Article shall be determined in accordance with the applicable insurance policies or contracts and shall not be subject to grievance or arbitration procedures herein.

ARTICLE 10 cont.:

The Employer shall provide a Dental Plan to members of the Assoc., similar to that provided by the Dept. at present. This Plan shall be provided in the same manner as the Group Insurance Plan.

Permanent full-time employees shall receive improved benefits or coverage, which may be adopted by the Water Dept. during the life of this Agreement.

## ARTICLE 11 - HOLIDAYS

A.) All permanent full-time employees covered by this Agreement who are regularly employed shall receive the following paid holidays:

New Year's Day
Martin Luther King Day
President's Day
Patriot's Day
Memorial Day
Independence Day
Labor Day
Columbus Day
Veteran's Day
Thanksgiving Day
Christmas Day

B.) All permanent full-time employees covered by this Agreement who are regularly employed shall receive a paid half (½) holiday for the day before Christmas.

C.) Any employee covered by this Agreement who is required to work on a holiday shall receive in addition to the regular holiday pay, an amount equal to time and one half (1½) the regular rate of pay for all hours worked, but in no case shall be less than an amount equal to one (1) hour working at the rate above. Any employee called to work on a holiday shall remain on call for the full one (1) hour without additional pay but need not remain on the job site during the entire period unless there is actual work to be performed.

D.) If a paid holiday falls during the work week, the overtime premium of time and one half (1½) shall apply to all hours worked in excess of thirty-two (32) hours.

E.) If a paid holiday falls during a weekend, the day off shall be taken either on the Friday preceding the Saturday holiday or the Monday following the Sunday holiday.

## ARTICLE 12 - VACATIONS

The vacation policy for employees of the Water Dept. shall be as follows:
Those with service of at least: Shall be granted vacation and pay at the flat rate and classification of:

| | |
|---|---|
| 1 Year | 2 Weeks |
| 5 Years | 3 Weeks |
| 10 Years | 4 Weeks |

ARTICLE 12 - CONT.:

A.) Employees vacation time shall be determined by their Anniversary date or years of service.
B.) In calculating vacation benefits, an employee who starts work, (or terminates) on or before
the 15th. of the month, shall be considered to have started work, (or terminated) on the first of the
month. An employee who starts work, (or terminates) after the 15th. of the month, shall be
considered to have started work, (or terminated) on the first day of the following month.
C.) Granted vacation shall be accrued monthly for all employees covered by this Agreement.
D.) Employees shall be allowed to carry over only one year's accrued vacation time. All other
vacation shall be used or forfeited. E.) in recognition of their long service to the Water Dept. all
employees shall be granted an additional day each year beginning with their fifteenth (15)
anniversary with a total accrued not exceeding thirty (30) working days.
F.) Terminating employees who have met the minimum vacation eligibility requirements shall
be paid for all unused accrued vacation.

### ARTICLE 13 - PERSONAL DAYS

Each employee covered by this Agreement shall receive three (3) personal days to be
used as they may per year.

### ARTICLE 14 - SICK LEAVE

Employees of the Water Dept. shall be provided the following sick leave plan:

Earned sick leave with pay shall accrue at the rate of one and one-quarter (1¼) days per
month. Any sick leave time is earned only by the days worked. Consequently an employee can
not accrue sick leave while he is on sick leave. Unused sick leave in excess of sixty (60) days
cannot be accumulated from year to year. An employee's total accumulated sick time may exceed
sixty (60) days at the end of that year. Employees shall be paid a bonus equal to one half (½) of
the unused sick time so forfeited. This bonus shall be paid at the rate of pay as of June 30th.. In
order to qualify for the bonus, the employee must be employed with the Water Dept. on the last
day of the fiscal year. An employee who retires shall, at the time of his retirement, be paid a
bonus equal to all unused accumulated sick leave. Paid sick leave shall never be available except
to cover actual absense from work due to illness. Sick leave must be authorized by the Dept. If an
employee is absent by reason of injury sustained while on duty for which he is entitled to receive
Workmen's Compensation, such absence shall not be considered sick leave under this plan.
However, if an employee injured while on duty and not entitled to Workmen's Compensation, he
shall be paid his regular wages, if approved by the Board and such absence shall be considered
sick leave.

## ARTICLE 15 - LONGEVITY

Employees covered by this Agreement shall be granted longevity payments as follows:

After the completion of:

| | |
|---|---|
| 5 Years of service | $ 75.00 |
| 10 Years of service | 100.00 |
| 15 Years of service | 200.00 |
| 20 Years of service | 300.00 |
| 25 Years of service | 400.00 |

The Anniversary date shall be used to determine eligibility for payments prior to December 31st., of each calendar year. Longevity payments shall be paid on the first pay day in December.

## ARTICLE 16 - FUNERAL LEAVE

Emergency leave without loss of pay up to four (4) consecutive calendar days, but not to exceed beyond the day of the funeral, provided the employee actually attends the funeral of said deceased, may be allowed for a death in an employee's family. The employee's family shall include:

| | |
|---|---|
| Wife | Sister |
| Husband | Grandparent |
| Mother | Grandchildren |
| Father | Mother- in- law |
| Children | Father-in- law |
| Brother | |

Any relative not included in above list shall be negotiable up to two (2) days leave including the day of the funeral.

## ARTICLE 17 - WEEKEND DUTY

A.)  Weekend duty shall be governed by the Water Commissioners' Policy as outlined in: Weekend Duty and Standby Policy.um

B.)  Employees covered by this Agreement shall be paid at a rate of time and one half (1½) for the following:

1-1/2 hours Stations duty - Saturday morning
1-1/2 hours  Stations duty - Sunday morning
All recall or Emergency overtime calls during the weekend. C.)
Management shall post a revolving schedule listing equitably the employees responsible for weekend duty.

D.)  Weekend standby shall be handled in the same manner as weeknight standby as outlined in Policy.

## ARTICLE 18 - MISCELLANEOUS

A.)  Examinations:  All physical examinations, when required by the Employer and performed under his direction, shall be paid for by the Employer, not to exceed two (2) hours at the employee's straight time hourly rate of pay. This applies only to physical examinations required to be performed during the employee's off-duty time.

B.)  Injury on the Job:                    When an employee is injured on the job, he shall be guaranteed his day's pay for day injured, provided he is instructed to cease work by the Employer or a physician, as a result of said injury. The employee who is injured on the job shall report his injury as soon as he is able to the Dept.

C.)  Dangerous Conditions:                    Under no circumstances shall an employee be required or assigned to engage in any activity involving dangerous conditions of work or danger to persons or property as determined by the Dept. or in violation of any applicable statute or court order, or governmental regulation relating to the safety of persons or equipment. D.)  Accidents: Any employee involved in any accident shall immediately report said accident and any physical injury sustained to the Dept. The employee, before starting his next shift, shall make out an accident report in writing, and shall turn in all available names and addresses of witnesses to any accidents.

E.)  Equipment Defects:                    Employees shall immediately report all defects of equipment. Such reports shall either be made to the Supt. Business Manager or in writing with a copy being retained by the employee. The Employer shall not ask or require any employee to take out equipment that has been reported as being and is in fact in an unsafe operating condition, as determined by the Dept. until same has been placed in a safe condition to the satisfaction of the Dept.

F.)  Announcements:                    Announcements shall be posted in a conspicuous place. Parties to this Agreement, both of whom may use the bulletin board for notices of routine matters agree that it would be improper to post denunciatory or inflamatory written materials.

G.)  Response to Fires:                    Employees who are members of the Onset Fire Department may respond to alarms or other emergencies and shall continue to receive their respective compensation even though they may not be performing their specific work for the Water Dept. This authorization may be specifically denied by the Dept. if the Dept. has an emergency of its own. H.)  Uniforms:  The Department shall supply to its employees, uniforms and safety equipment. This shall include, but not limited to uniform shirts and pants, hard hats,~gloves, rain gear and rubber boots. The Employer reserves the right to provide other portions of the uniform or specific equipment.

## ARTICLE 19 - RE-CALL

Any employee called back to work on the same day after having completed his assigned work and left his place of employment, and before his next regularly scheduled starting time, shall be paid at the rate of time and one half (1½) for all hours worked on recall. He shall be guaranteed a minimum of one (1) hour pay at time and one half (1½). Any employee so recalled shall remain on call for the full hour without additional pay but need not remain on the job site during the entire period unless there is actual work to be performed. This artical excludes recall during weekend duty.

## ARTICLE 20 - GRIEVENCE AND ARBITRATION PROCEDURES

A.)  A Grievence is a dispute between the parties over the interpretation or application of the terms of this written Agreement and shall be handled in accordance with the following grievence procedure:

STEP 1:  The Assoc. submits, in writing, its grievence to the Water Dept. Supt./Business Manager within five (5) days after the grievence arises. The Supt./Business Manager has five (5) days, (exclusive of weekends and holidays), to act upon same.

STEP 2:  Within Five (5) days (exclusive of weekends and holidays), of transmittal of an answer by the Supt./Business Manager, either party may request that the grievence be presented to the Board of Water Com-missioners which has fifteen (15) days to act upon same.

STEP 3:  In the event of failure of the parties to settle the grievence under Steps 1 & 2, either party may request mediation, by the State Board of Conciliation and Arbitration which may meet with the parties to attempt to settle the grievence. Notice to the other party and to the Board of Conciliation and Arbitration to be within ten (10) days of action taken under Step 2.

STEP 4:  If no settlement is reached within ten (10) days after the grievence is submitted to mediation, the matter may go to arbitration in the following manner upon assent of both parties in writing:
a.)  The Assoc. shall designate one person. b.)  The Water Dept. shall designate one person. c.)  A third disinterested party shall be designated upon by the representatives of the Assoc. and the Dept. d.) In the event that the representatives from the Assoc. and the Dept. cannot agree upon a third arbitrator within ten (10) days, then the parties agree to request the Mass. Board of Conciliation and Arbitration to select an arbitration from the panel maintained by the Board the decision of these arbitrators shall be final and binding. e.)  Costs of arbitration, including fees of arbitrators, costs of records and incidental expenses shall be borne by the party found at fault. Each party shall be responsible for all costs of preparation, presentation, and appeal, if any, of its won case.

STEP 5:  If the Dept. has a grievence, either the Board of Water Commissioners or the Supt./Business Manager shall notify the Assoc. Steward within five (5) days, who shall meet with the person or Board requesting it, within ten (10) days, thereafter. If said matter is not resolved within five (5) days of said meeting, it may, at the discretion of the Dept., be processed through the appropriate steps as set forth above.

STEP 6:  Any grievence not processed by the Assoc. through Steps 1-4 above, shall be waived.

ARTICLE 20 CONT:

B.) Grievance Procedure, Notification: The above steps that require notification will be by U.S. Certified mail. Notice to the Supt./Business Manager and the Assoc. Steward shall constitute notice to the parties respectfully.

C.) No Strike Clause: It shall be a violation of this Agreement for any employee to engage in, induce, or encourage any strike, work stoppage, slowing down or withholding of service as provided by General

Laws:    Chapter 150E, section 9A.

D.) The Board of Water Commissioners reserve the right to act as their own agent at any time, and the words, "Board of Water Commissioners" shall be synonomous with any other representative specified by this Agreement. The Board also reserves the right to specify or allow someone other than the Supt./Business Manager to act as its representative where such title appears in this Agreement. The Dept. recognizes its duty to notify the Assoc. of its representative, if different from the one noted in this Agreement.

## ARTICLE 21 - WAGES

Employees covered by this Agreement shall receive the following:

An increase of pay for the fiscal year beginning July 1, and ending June 30, of an amount determined by the Board of Water Commissioners.

The Board of Water Commissioners reserve the right to establish and reward outstanding employees with a merit increase or one time bonus. Said right will by no means be used to bribe or coerce any employee for any reason, but to extend our gratitude for an excellent performance above and beyond a normal call of duty.

The Board of Water Commissions reserve the right to reopen the wage article only, should the economic conditions of the District warrant doing so.

## ARTICLE 22 - DURATION OF AGREEMENT

This Agreement covers the fiscal year beginning July 1, 2002 and ending June 30, 2003, or until it is agreed upon to change such agreement. It is provided nevertheless that it may be opened upon mutual agreement.

Notwithstanding any provisions of this Agreement, it is hereby agreed as follows:

A.) That the funds be duly appropriated at a District meeting or assured by the Water Department.

B.) That this Agreement be subject to all applicable rules, regulations and laws of the Federal Government of the United States and the Commonwealth of Massachusetts as well as the By-Laws of the Onset Fire District or the Water Department in existance at any time during the term of this Agreement.

IN WITNESS THEREOF, the parties hereto have caused these presents to be signed by their duly authorized representatives on the ___15___ day of ___MAY___, 2002.

FOR THE ASSOCIATION:

STEWARD _____

Onset Water Department Employee's Association
Onset Fire District Water Department
15 Sand Pond Road Onset, Ma. 02558

FOR THE EMPLOYER:

CHAIRMAN

CLERK

Board of Water Commissioners
Onset Fire District
Water Department
15 Sand Pond Road Onset, Ma.
02558

# Onset Fire District
# Board of Water Commissioners

15 SAND POND ROAD
Onset, Massachusetts 02558
Telephone Wareham (508) 295- 0603

FAX (508) 295-0606

JOHN COOK/CHARIMAN
MICHAEL SANBORN/CLERK

RE: ADMINISTRATIVE LEAVE WITH PAY

LORI MORAN:

YOU ARE ON ADMINISTRATIVE LEAVE WITH PAY UNTIL FURTHER NOTICE, FOR DISREGARD OF A DIRECT ORDER FROM THE SUPERINTENDENT, AND FOR CONTINUING TO PURSUE THE MATTER ON APRIL 27, 2004.

WILLIAM F. GAY III
SUPERINTENDENT
MAY 3, 2004

Exhibit

I

To whom it may concern,                                                   4/27/2004

Today at approximately 3:10 at the Onset Water Department Office, (Present at this time was myself, Kathi Semple, Peter Murphy, and Lori Moran) I was giving Kathi Semple instructions on a job assignment in the office. During the middle of the conversation I innocently said to Kathi "You get the paperwork together and she can do the copying and typing." and I will do the tape's. At this point Lori then looked at me and said, "So I'm just a "she". I apologized to Lori not knowing that I had offended Lori with a simple elementary school taught english phrase. I did not understand how or why I had offended her anyway since I was having a conversation with Kathi about a job assignment. At that time she proceeded to badger me for my usage of words several times. I left the room momentarily; at the most I was gone for 5 minutes. I came back into the main office and went to the commissioner's room to retrieve some of the materials needed for the assignment. Lori continued to badger me about the way I had referred to her in the earlier statement to Kathi. Lori angrily repeatedly said to me " I'm only a "she". At this point I told Lori that no type of disrespect was intended that it was just words in a sentence I am ordering you to stop. Lori then was abrupt with me and told me to "Shut up". I asked her "Did you tell me to shut up?" She said to me "I didn't get it all the way out, I'm not that type of person. But the words "shut up" I heard very clearly from Lori also another person heard her clearly she told me to shut up

Then I went outside to the loading dock to remove myself from the hostile environment that Lori created. Lori followed me to loading dock and proceeds to badger me again. I still did not acknowledge her unprofessional behavior. I then I got into the truck and left the Water Department property.

When I was on my way back to the office from the Fire Department. I received a Nextel call from Kathi. Kathi wanted to make sure I remembered to bring one of her personal book home for my wife. I asked Kathi if she would be able to give me a ride home. Lori responded to me back on the Nextel and said "I'll give you a ride home on the front of my bumper." I replied back to Kathi on the Nextel " can I have a ride home?" I did not acknowledge the statement made to me by Lori at this time I was in fear of my well being not knowing what Lori was capable of after being so persistent and hostile to me. I went back to the office and parked my truck. I went into the building; Kathi, Jay, and Lori were there. I do not know where Chris was at this time. Lori was sitting at her desk, as I was walking back into the room she started to make the same comments that she had made earlier. I gave Lori a verbal warning and stated this is your verbal warning. Your comments are unnecessary and disrespectful." Before I could tell Lori there would be more disciplinary actions taken for bodily threats. Lori jumped up started yelling angrily to me "Are you firing me? Are you firing me?" I ordered her to go home with pay for the remainder of the day. Lori did not go home. She told me" If you are firing me, I have enough things on you to have you fired too. "Nothing was ever said about firing and she now had degraded my personal character" I left the building again to get away from the hostile environment Lori created. When I came back upstairs to arm the building alarm for the night at approxmentley 4:05 PM. Lori and Kathi were in the parking lot. As I came outside hoping to avoid Lori but she confronted me again in the parking lot repeatedly yelling violently "Am I fired? Am I fired?" Remaining calm I told her that I would let her know. I was now in fear of my life after waiting for her to go home before I came outside in the parking lot only to be stocked down and verbally abused by Lori


Exhibit
J

again. I got into Kathe's van and went home. I did not acknowledge anymore of Lori's statements as me and Kathi left. The only mistake I believe I made was not to call the police to rectify the problem. I do feel that I did my best to give Lori a chance to cool off I realize we all have bad days but this day was far beyond reason for anyone to take Lori abuse. I am willing to help and forgive anyone. I have gone the last 7 or 8 months to make sure not to say or do any wrong actions to offend Lori. I also feel Lori does not respect higher authorities because past false accusations made against the other employees and me by Lori. On this day I think she wanted to be fired. Also I went to the same sexual harassment class as Lori. And it seems all that man taught us Lori used it to put me in a position so I could not say or do any right for her .I feel she would have manipulated anything I said to her or did in her advantage against me some how. I also know if I had ever done this to Lori I would lose my job for this type of unusual actions and behavior. Because of Lori's unusual actions and behavior I can no longer feel safe working with her.

Superintendent

William F.Gay 3rd

# *Onset Fire District*
# *Board of Water Commissioners*

15 SAND POND ROAD
Onset, Massachusetts 02558
Telephone Wareham (508) 295- 0603
FAX (508) 295-0606

MICHAEL SANBORN/CHARIMAN
BRIAN O'HEARNE/CLERK
ANDREW DIPASQUA

JUNE 17, 2004

LORI-ANN MORAN
P.O. BOX 1344
ONSET, MA. 02558-1344

DEAR MRS. MORAN:

THIS IS TO NOTIFY YOU THAT THE ONSET FIRE DISTRICT BOARD OF WATER COMMISSIONERS WILL HOLD A PUBLIC MEETING AT 7:00 P.M. ON WEDNESDAY JUNE 30, 2004 AT THE ONSET WATER DEPARTMENT OFFICE AT 15 SAND POND ROAD IN ONSET, MA. A PURPOSE OF THE MEETING WILL BE TO CONSIDER YOUR ALLEGED ACTIONS ON APRIL 27, 2004 AS RELATED IN A MEMORANDUM OF WILLIAM F. GAY, 3RD. DATED APRIL 27, 2004 AND ENCLOSED HEREWITH.

PLEASE BE ADVISED THAT UPON CONSIDERATION OF THE MATTER, THE BOARD OF WATER COMMISSIONERS MAY IMPOSE DISCIPLINARY ACTION AGAINST YOU INCLUDING SUSPENSION WITH OR WITHOUT PAY, DISMISSAL FROM YOUR POSITION AS AN EMPLOYEE OF THE ONSET WATER DEPARTMENT OR OTHER ACTION.

YOU WILL BE AFFORDED AN OPPORTUNITY AT THE MEETING TO PRESENT ORAL STATEMENTS, DOCUMENTARY EXHIBITS AND ANY OTHER EVIDENCE. YOU WILL ALSO BE AFFORDED AN OPPORTUNITY AT THE MEETING TO HAVE ANY WITNESSES PRESENT ORAL STATEMENTS OR OTHER EVIDENCE BEARING ON THE MATTERS UNDER CONSIDERATION.

PLEASE ASK YOUR ATTORNEY TO INFORM THE BOARD'S COUNSEL, DANIEL F. MURRAY, OF THE NAME AND ADDRESS OF ANY PERSON YOU WANT THE BOARD TO ASK TO ATTEND THE MEETING.

PLEASE BE ADVISED THAT CROSS EXAMINATION OR QUESTIONING OF PERSONS WHO PRESENT ORAL TESTIMONY AT THE MEETING WILL NOT BE ALLOWED EXCEPT FOR QUESTIONS BY THE WATER COMMISSIONERS.



Exhibit
K

CONT:

YOU ARE INVITED TO ATTEND THE MEETING WITH YOUR COUNSEL.

VERY TRULY YOURS,

MICHAEL SANBORN/CHAIRMAN
ONSET FIRE DISTRICT
BOARD OF WATER COMMISSIONERS


ENCLOSURE

CC: ATTORNEY MARGARET A. ISHIHARA


SENT VIA REGULAR AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED

To whom it may concern

Today at approximately 3:10 at the Onset Water Department Office, (Present at this time was myself, Kathi Semple, Peter Murphy, and Lori Moran) I was giving Kathi Semple instructions on a job assignment in the office. During the middle of the conversation I innocently said to Kathi "You get the paperwork together and she can do the copying and typing." and I will do the tape's. At this point Lori then looked at me and said, "So I'm just a "she". I apologized to Lori not knowing that I had offended Lori with a simple elementary school taught english phrase. I did not understand how or why I had offended her anyway since I was having a conversation with Kathi about a job assignment. At that time she proceeded to badger me for my usage of words several times. I left the room momentarily; at the most I was gone for 5 minutes. I came back into the main office and went to the commissioner's room to retrieve some of the materials needed for the assignment. Lori continued to badger me about the way I had referred to her in the earlier statement to Kathi. Lori angrily repeatedly said to me " I'm only a "she". At this point I told Lori that no type of disrespect was intended that it was just words in a sentence I am ordering you to stop. Lori then was abrupt with me and told me to "Shut up". I asked her "Did you tell me to shut up?" She said to me "I didn't get it all the way out, I'm not that type of person. But the words "shut up" I heard very clearly from Lori also another person heard her clearly she told me to shut up

Then I went outside to the loading dock to remove myself from the hostile environment that Lori created. Lori followed me to loading dock and proceeds to badger me again. I still did not acknowledge her unprofessional behavior. I then I got into the truck and left the Water Department property.

When I was on my way back to the office from the Fire Department. I received a Nextel call from Kathi. Kathi wanted to make sure I remembered to bring one of her personal book home for my wife. I asked Kathi if she would be able to give me a ride home. Lori responded to me back on the Nextel and said "I'll give you a ride home on the front of my bumper." I replied back to Kathi on the Nextel " can I have a ride home?" I did not acknowledge the statement made to me by Lori at this time I was in fear of my well being not knowing what Lori was capable of after being so persistent and hostile to me. I went back to the office and parked my truck. I went into the building; Kathi, Jay, and Lori were there. I do not know where Chris was at this time. Lori was sitting at her desk, as I was walking back into the room she started to make the same comments that she had made earlier. I gave Lori a verbal warning and stated this is your verbal warning. Your comments are unnecessary and disrespectful." Before I could tell Lori there would be more disciplinary actions taken for bodily threats, Lori jumped up started yelling angrily to me "Are you firing me? Are you firing me?" I ordered her to go home with pay for the remainder of the day. Lori did not go home. She told me" If you are firing me, I have enough things on you to have you fired too. "Nothing was ever said about firing and she now had degraded my personal character" I left the building again to get away from the hostile environment Lori created. When I came back upstairs to arm the building alarm for the night at approxmentley 4:05 PM. Lori and Kathi were in the parking lot. As I came outside hoping to avoid Lori but she confronted me again in the parking lot repeatedly yelling violently "Am I fired? Am I fired?" Remaining calm I told her that I would let her know. I was now in fear of my life after waiting for her to go home before I came outside in the parking lot only to be stocked down and verbally abused by Lori

again. I got into Kathe's van and went home. I did not acknowledge anymore of Lori's statements as me and Kathi left. The only mistake I believe I made was not to call the police to rectify the problem. I do feel that I did my best to give Lori a chance to cool off. I realize we all have bad days but this day was far beyond reason for anyone to take Lori abuse. I am willing to help and forgive anyone. I have gone the last 7 or 8 months to make sure not to say or do any wrong actions to offend Lori. I also feel Lori does not respect higher authorities because past false accusations made against the other employees and me by Lori. On this day I think she wanted to be fired. Also I went to the same sexual harassment class as Lori. And it seems all that man taught us Lori used it to put me in a position so I could not say or do any right for her. I feel she would have manipulated anything I said to her or did in her advantage against me some how. I also know if I had ever done this to Lori I would lose my job for this type of unusual actions and behavior. Because of Lori's unusual actions and behavior I can no longer feel safe working with her.

Superintendent

*William F. Gay 3rd*
William F. Gay 3rd

### Fleming & Ishihara, P.C.
### 86 Church St.
### Mattapoisett, MA. 02739

Donald J. Fleming                                                    Margaret A. Ishihara

28 June 2004

Daniel F. Murray
Decas, Murray & Decas
PO Box 201
Middleboro, MA. 02346

Fax 1 page to 508-947-7147

Re:    Lori Ann Moran

Dear Attorney Murray;

I am in receipt of a letter dated June 17, 2004 from the Onset Fire District Board of Water Commissioners concerning the hearing on June 30, 2004.

In that letter the Commissioners state that we will not be allowed to cross examine any witnesses.    This restriction prevents us from having an adequate opportunity to be heard in violation of the due process clause of the U.S. Constitution and the Massachusetts Declaration of rights.    See generally <u>Mathews vs. Eldridge</u>, 424 U.S. 319, 334 (1976).

Additionally, at the meeting on June 2, 2004, there was supposed to be a discussion of a possible resolution of this matter.    However at that time the Water Superintendent, William F. Gay, III, made the unfounded accusation that he did not feel safe around Ms. Moran.    Mr. Gay was represented by an attorney at that meeting.    Our position is that at the upcoming hearing, Ms. Moran is the one facing disciplinary action, not Mr. Gay, and Mr. Gay is not entitled to have any attorney representing him.    Mr. Gay is a manager for the Water Commissioners, and their interests are represented by you.

Please let me know your position on these matters prior to the hearing.

Very truly yours,

Margaret A. Ishihara

**Telephone: (508) 758-6981**                          **il: MLMATTLAW@VERIZON.NET**
**Fax: (508) 758-3406**

Exhibit

L

**Fleming & Ishihara, P.C.**
**86 Church St.**
**Mattapoisett, MA. 02739**

Donald J. Fleming

Margaret A. Ishihara
29 June 2004

Daniel F. Murray
Decas, Murray & Decas
PO Box 201
Middleboro, MA. 02346

Fax 1 page to 508-947-7147

Re:    Lori Ann Moran, Onset Fire Distric, Board of Water Commissioners

Dear Attorney Murray;

In Mr. Gay's statement attached to the June 17, 2004 letter he states that "I also feel that Lori does not respect higher authorities because past false accusations made against other employees and me [Gay] by Lori".    What specific false accusations does Mr. Gay say that Lori made against other employees and Mr. Gay?    We are entitled to have this information if the Water Commissioners are relying on Mr. Gay's statement as the statement of charges against Ms. Moran.

Also, please be advised that it is my intention to have a court reporter present at the hearing tomorrow evening.

Very truly yours,

Margaret A. Ishihara



**Telephone: (508) 758-6981**          e-mail: **MLMATTLAW@VERIZON.NET**
**Fax: (508) 758-3406**

*Onset Fire District*
# Board of Water Commissioners

15 SAND POND ROAD
Onset, Massachusetts 02558
Telephone Wareham (508) 295- 0603
FAX (508) 295-0606

MICHAEL SANBORN/CHARIMAN
BRIAN O'HEARNE/CLERK
ANDREW DIPASQUA

JULY 1, 2004

LORI-ANN MORAN
P.O. BOX 1344
ONSET, MA. 02558-1344

DEAR MRS. MORAN:

ON JUNE 30, 2004 AT THE BOARD OF WATER COMMISSIONERS SPECIAL MEETING IT WAS VOTED FOR YOUR TERMINATION EFFECTIVE IMMEDIATELY.

THIS LETTER IS ADVISING YOU OF YOUR TERMINATION AS OF JUNE 30, 2004.

SINCERELY,

MICHAEL SANBORN/CHAIRMAN
ONSET FIRE DISTRICT
BOARD OF WATER COMMISSIONERS

ENCLOSURE

CC: ATTORNEY MARGARET A. ISHIHARA

SENT VIA REGULAR AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Exhibit
*N*

## ONSET WATER DEPARTMENT EMPLOYEE'S ASSOCIATION
## GRIEVANCE

Name of Grievant:    Lori Ann Moran, 88 Main Ave., Onset, MA. 02558

Date: _____ *July 2nd 2004* _____

Classification:    Clerical

Nature of Grievance

On the evening of June 30, 2004, the Onset Board of Water Commissioners voted to terminate Lori Ann Moran from her position as a clerical employee with the Onset Water Department.

Ms. Moran was not given a fair hearing because a majority of the Water Commissioners were not impartial, and she was not afforded an opportunity to cross examine witnesses or otherwise properly present her case.    Ms. Moran was allegedly terminated for conduct which occurred on April 27, 2004.    However, the Onset Water Department has not issued procedures, rules, and regulations governing the internal conduct of employees, and no clear standards existed against which to measure her alleged bad conduct.    Further, under management rights, the employer has not retained the right to terminate employees.

Clause of Contract Violated

Article 2 – Management Rights

Article 7 – Hours of work

Remedy Desired:    Reinstatement of Ms. Moran to her position with the Onset Water Department with full pay, benefits and seniority.

Meeting desired: Yes, with representation by counsel.

Signature of Employee _____ *Lori Ann Moran* _____

Signature of Union Official _____

Administration Answer:

_____
_____
_____
_____
_____

Cc:    Michael Sanborn, Chair, Board of Water Commissioners
       William Gay, Superintendent

**Exhibit**

*C*

| CIVIL ACTION<br>COVER SHEET | RECEIVED<br>DOCKET NO.<br>DEC - 6 2004<br>04 - 14586<br>PLYMOUTH SUPERIOR COURT | Trial Court of Massachusetts<br>Superior Court Department<br>County: Plymouth |
|---|---|---|

PLAINTIFF(S)

DEFENDANT(S)

ATTORNEY, FIRM NAME AND TELEPHONE
Margaret A. Ishihara,  Fleming & Ishihara, P.C.
86 Church Street
Mattapoisett, MA 02739          BBO#247930

ATTORNEY (if known)

## Origin code and track designation

Place an X in one Box only:
- [X] 1. FO1 Original Complaint
- [ ] 2 FO2 Removal to Sup.Ct.c.231, s.104
- [ ] 3. FO3 Retransfer to Sup. Ct. c. 231, S. 102C (X)
- [ ] 4. FO4 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. FO5 Reactivated after rescript; relief from judgment/Order (Mass. R.Civ.P.60) (x)
- [ ] 6. E10 Summary Process Appeal (X)

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.          TYPE OF ACTION (specify)     Track     IS THIS A JURY CASE
__E17__          __Civil Rights_____     ( A )     ( X ) YES  ( ) NO

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

TORT CLAIMS
(Attach additional sheets as necessary)

A.   Documented medical expenses to date:

| | | | | |
|---|---|---|---|---|
| 1. | Total hospital expenses | | | $ |
| 2. | Total Doctor Expenses | | | $ |
| 3. | Total chiropractic expenses | | | $ |
| 4. | Total physical therapy | | | $ |
| 5. | Total other expenses | | | $ |
| | | | Subtotal | $ |
| B. | Documented lost wages and compensation to date | | | $ |
| C. | Documented property damages to date | | | $ |
| D. | Reasonably anticipated future medical and hospital expenses | | | $ |
| E. | Reasonably anticipated lost wages | | | $ |
| F. | Other documented items of damages (describe) | | | $ |
| G. | Brief description of Plaintiff's injury, including nature and extent of injury (describe) | | | |
| | | | TOTAL | $ |

CONTRACT CLAIMS
(Attach additional Sheets as necessary)
Provide a detailed description of claim(s):

TOTALS          000000

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT. None

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____     Date 3 December 2004

A TRUE COPY ATTEST

_Francis R. Powers_

CLERK