UNITED STATES DISTRICT COURT
COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| LORI ANN MORAN,<br>   Plaintiff<br><br>v.<br><br>ANDREW DIPASQUA, MICHAEL SANBORN, WILLIAM F. GAY, III, and the ONSET FIRE DISTRICT,<br>   Defendants | C.A. No. 05-10033 NG |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### I. FACTS

Pursuant to Local Rule 56.1, the Defendants have submitted the accompanying Concise Statement of Material Facts as to which there is No Genuine Issue to be Tried, which is incorporated here by reference. The crux of Plaintiff's Complaint is that the proceedings terminating her employment as an office clerk for the Onset Water Department and did not provide her adequate due process, and that her termination violated her constitutional right to Equal Protection. The Plaintiff received all the process she was due, however, and she was not treated differently than any similarly situated persons.

The salient facts are as follows:[1] Plaintiff, worked for the Onset Water Department for approximately 15 months. Plaintiff's duties included answering phones, helping customers at the counter and reading meter sheets. William Gay became the Superintendent of the Water Department approximately seven months after Plaintiff was hired. The Water Department had five employees: the Superintendent, the Plaintiff, Kathi Semple (office manager), Chris Poirier (foreman) and Jay

---

[1] Unless otherwise indicated, all factual averments contained herein are supported by the Defendant's comprehensive Statement of Undisputed Facts accompanying this Memorandum. Thus the citations to the record here are omitted for brevity.

Semple (laborer). There was no employee's handbook or other documents outlining the terms and conditions of employment for Water Department employees. There was, however, an Employee's Association which had an Agreement with the Onset Water Department to establish a grievance procedure and rates of pay and other conditions of employment.

On the afternoon of April 27, 2004 Plaintiff had a confrontation with Superintendent Gay that precipitated her termination. Superintendent Gay was speaking to Kathi Semple about responding to a citizen's request, while Plaintiff worked at her desk some eight to ten feet away. Plaintiff then verbally objected to Superintendent Gay referring to Plaintiff as "she" and "her" when speaking to Kathi Semple. Plaintiff repeated her objections about being called "she" and "her" even after Superintendent Gay left the room and returned on several occasions. Although it is disputed whether Plaintiff told the Superintendent to "shut-up" that afternoon, plaintiff herself readily admits to telling the Superintendent via the radio "I'll give you a ride home on the bumper of my van." Superintendent Gay took this as a threat to run him over with her car. The Superintendent thereafter sent the Plaintiff home with pay for the rest of the afternoon, but Plaintiff remained in the parking lot after 4:00 closing time to ask the Superintendent whether she was being fired.

The next morning, Plaintiff was told not to report to work, and thereafter she remained on administrative leave with pay until the Board of Water Commissioners voted to terminate her employment some 10 weeks later. The Board could not act immediately because the Board did not have it's full membership due to retirement and pending elections. Plaintiff received several letters advising her she was on administrative leave for the events that occurred on 4/27/04. By letter dated June 17, 2004, the Water Commissioners notified Plaintiff of a public meeting to consider the discipline of Plaintiff, and included a copy of Superintendent Gay's memorandum detailing his version of events of that day, which was the basis for any potential discipline. The hearing lasted

about one hour, and Plaintiff was asked to make a statement and her attorney made a statement on her behalf, Superintendent Gay made a statement, and each of the employees made statements at the hearing. The spectators to the hearing were also permitted to make comments to the Board. Upon the advise of its attorney, the Board notified the Plaintiff that cross-examination of witnesses would not be permitted. But otherwise, Plaintiff was not precluded or barred from presenting evidence at the hearing.

At the end of the meeting, the Water Commissioners took a vote of two in favor and one abstaining to terminate Plaintiff's employment. Defendant DiPasqua voted to terminate Plaintiff's employment because after hearing the testimony of the witnesses he felt she had "[un]justifiably threatened the Superintendent." Defendant Sanborn voted to terminate Plaintiff because he takes threats made in the workplace very seriously, and he believed Plaintiff had threatened the Superintendent. Although she claims these two Board members were biased, Plaintiff had no evidence of bias by Defendant Sanborn and could only point to a handwritten, unsworn letter of a Mr. Harlow as purported evidence of bias by Defendant DiPasqua. After the hearing Plaintiff filed a grievance, which resulted in another hearing by the Board of Water Commissioners on July 24, 2004. When the Board voted to deny the grievance, Plaintiff sought review by the Massachusetts Board of Conciliation and Arbitration, which is still pending. In addition, although Plaintiff claims Kathi Semple was treated differently, Ms. Semple never swore at the Superintendent, always had amicable disagreements with him, and never threatened bodily harm to him.

## II. STANDARD OF REVIEW

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c). "Once the movant avers 'an absence of evidence to support the nonmoving party's case, ... the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir. 1991) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). While a court must examine the record in the light most favorable to the opposing party, "Rule 56 does not invite a court to enter the realm of surmise." Local 48 v. United Brotherhood of Carpenters & Joiners, 920 F.2d 1047, 1051 (1st Cir. 1990). "[W]here elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994) (citations omitted).

### III. ARGUMENT

#### A. No Due Process Violation

The Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty or property without due process of law." U.S. Const. amend XIV. The procedural component of the Due Process Clause of the Fourteenth Amendment requires that, before an individual is deprived of a constitutionally protected property interest by government action, he must be given "notice and opportunity for hearing appropriate to the nature of the case." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542 (1985). "Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Matthews v. Eldridge, 424 U.S. 319, 333 (1976). Rather, the standard is flexible and "calls for such procedural protection as the particular situation demands." Id.; see also Mullane v. Central Hanover Bank &

4

Trust Co., 339 U.S. 306, 314 (1950) (requiring "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). "The constitution does not require every procedural protection that might help; it simply requires that a private person have a basically fair opportunity to convince the decision-maker, by presenting proofs and arguments and evidence and replies to the arguments of others." Newman v. Burgin, 930 F.2d 955, 961 (1st Cir. 1991).

### 1. No Actionable Property Interest in Continued Employment

The prerequisite to a claim arising from an alleged procedural due process violation is the existence of a property interest. At least since 1970, the Fourteenth Amendment term "property" has referred not simply to "actual ownership of real estate, chattels, or money," but also to "interests that a person has already acquired in specific (governmental) benefits." Board of Regents v. Roth, 408 U.S. 564, 572, 576 (1972). Thus, in Roth, the Supreme Court stated that for an interest in a benefit to become a "property" interest, a person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577. The Due Process Clause affords a public employee who has a property interest in continued employment an opportunity for a hearing regarding the reasons for his employment termination. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). To establish the existence of a property interest, "the employee must demonstrate that he has a legally recognized expectation that he will retain his position." Ortega-Rosario v. Alvarado-Ortiz, 917 F.2d 71, 73 (1st Cir.1990).

Whether an employee has a property interest in continued employment is a matter that must be determined in accordance with applicable principles of state law. Loudermill, 470 U.S. at 538. In order to establish the existence of a property interest, the employee must demonstrate that he has a legally recognized expectation that he will retain his position. See Perry v. Sindermann, 408 U.S.

593, 599 (1972). Such an expectation may derive from a statutory job classification, a provision in the contract of employment (express or implied) or an officially sanctioned rule of the workplace. Id. at 601-02; Cheveras-Pacheco v. Rivera-Gonzalez, 809 F.2d 125, 127 (1st Cir.1987). The First Circuit has held that "A mere subjective expectancy of continued employment is not sufficient." Ortega-Rosario v. Alvarado-Ortiz, 917 F.2d 71, 73 (1st Cir. 1990).

In the present case, it is clear that Plaintiff had no right to continued employment. There was no contractual provision or officially sanctioned rule of the workplace that would have entitled Plaintiff to retain her former position. The agreement between the Water Department and the Employee's Association did not provide such an expectation. Although a collective bargaining agreement may create the requisite property interest, this is true only to the extent such agreements provide for-cause termination standards. See, e.g. Bennett v. City of Boston, 869 F.2d 19 (1st Cir. 1989) (holding collective bargaining agreement limiting discharge only on "just cause" after six months of employment did not give provisional employee a property interest); see also Curry v. Pennsylvania Turnpike Com'n, 843 F.Supp. 988, 992 (E.D.Pa. 1994) (recognizing property interest only if employment contract confers protected status or explicitly provides for cause termination). As the First Circuit explained, even "the use of the words 'for cause' does not magically, or always, transform a job into protected property; the focus must remain upon the nature of the employee's legitimate expectation of continued entitlement to his or her job." Bennett v. City of Boston, 869 F.2d 19, 21 (1st Cir. 1989) (citations omitted). In the present case, nowhere in the Employee's Association agreement is there a provision limiting terminations to "for cause." See Onset Water Department Employee's Assoc. Agreement (attached as **Exhibit E**). Although the agreement contains grievance procedures, this alone does not create constitutionally protected property interests. See Stow v. Cochran, 819 F.2d 864 (8th Cir. 1987). Thus, Plaintiff had no legitimate

expectation of continued employment protected by the U.S. Constitution.

## 2. The Plaintiff Had All the Process that is Due

Even should this Court find a property right existed, the Plaintiff did, in fact, receive all the process that was due. Under the circumstances alleged by plaintiff, she "was entitled to the constitutional minimum of 'some kind of hearing' and 'some pretermination opportunity to respond.'" O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir.2000). More specifically, "[t]he pre-termination process 'need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story." O'Neill, 210 F.3d at 48. When the First Circuit first applied the Loudermill requirement it held that a Plaintiff's due process rights were not violated when he was not afforded a pretermination evidentiary hearing because the Plaintiff "was afforded an ample opportunity to defend his actions and rebut any erroneous allegations." Brasslett v. Cota, 761 F.2d 827, 836 (1st Cir. 1985).

It is undisputed that Plaintiff received the requisite notice and an opportunity to be heard. Plaintiff was verbally told not to report to work, and to stay home with pay by Kathi Semple on behalf of the Superintendent. That same day she received by hand delivery a written letter instructing her to stay out of work for three days. The following day, April 29, 2004, she received a letter advising her she was "on administrative leave for the events that occurred on 4/27/04 and are pending disciplinary action." Then, on May 3, 2004 Plaintiff received another letter advising she was on administrative leave "for disregard of a direct order from the Superintendent, and for continuing to pursue the matter on April 27, 2004." By letter dated June 17, 2004, the Water Commissioners notified Plaintiff of a public meeting to be held on June 30, 2004 to consider the discipline of Plaintiff, and included a copy of Superintendent Gay's memorandum detailing his version of events of that day, which was the basis for any potential discipline.

7

Plaintiff first contacted her attorney on Thursday, April 29, 2004, and attended all of the hearings concerning her employment together with her attorney. The hearing on June 30, 2004 lasted about one hour, and Plaintiff was asked to make a statement and her attorney made a statement on her behalf, Superintendent Gay made a statement, and each of the employees made statements at the hearing. The spectators to the hearing were also permitted to make comments to the Board. Upon the advise of its attorney, the Board notified the Plaintiff that cross-examination of witnesses would not be permitted. But otherwise, Plaintiff was not precluded or barred from presenting evidence at the hearing.

### a. No Right to Cross-Examination Exists at Administrative Pre-Termination Hearing

To the extent Plaintiff's due process claim is based upon the lack of cross-examination, it still must fail. Where protected interests in employment are at stake, a pre-termination hearing is required by the due process clause, but it "need not be elaborate." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). The "tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546. The right to confront, and cross-examine witnesses is not an independent constitutional right except in criminal proceedings. See U.S. Const. Amend. VI. While the right to confront and cross-examine is a fundamental aspect of procedural due process, it is not an absolute right. See Wolff v. McDonnell, 418 U.S. 539 (1974). The United States Supreme Court has held that confrontation and cross-examination are not rights universally applicable to all proceedings. See Brock v. Roadway Exp., Inc., 481 U.S. 252 (1987); Baxter v. Palmigiano, 425 U.S. 308 (1976); Wolff, 418 U.S. 539 (1974); see also Frumkin v. Bd. of Trustees, 619 F.2d 19 (6th Cir. 1980) (holding a plaintiff not required to conduct a cross-examination at a pre-termination hearing).

Two separate Circuit Courts have rejected an employee bus driver's assertion that the driver was constitutionally entitled to confront and cross-examine school children who witnessed the incidents giving rise to the termination proceedings. See Rodgers v. Norfolk School Bd., 755 F.2d 59 (4th Cir. 1985) (where driver allegedly engaged in knife fight with her sister on bus); Green v. Bd. of School Comm's, 716 F.2d 1191 (7th Cir. 1983) (a driver was terminated for sexually harassing girls assigned to his bus). Similarly, a Federal District Court held that the administration's decision based on an investigation and an informal hearing without the right to subpoena and cross-examine comported with the Due Process guarantees because "a full-scale trial would have afforded plaintiff no greater protection than that provided him under the procedure invoked." Krause v. Small Bus. Admin., 502 F.Supp. 1332, 1340-1341 (S.D.N.Y. 1980).

### b. No Due Process Violation from Baseless Unsupported Allegations of Bias

Nor may Plaintiff's unsupported claims of bias sustain her constitutional claim. Plaintiff had no evidence of bias by Defendant Sanborn and could only point to a handwritten, unsworn letter of a Mr. Harlow as purported evidence of bias by Defendant DiPasqua.. The Harlow letter quotes Defendant DiPasqua as stating before the disciplinary meeting that "D—d if I do, and D—d if I don't. The other four said they will sue." Although DiPasqua only admits to having made the statement that he was "damned if I do ..." this is on its face an equivocal statement that could be interpreted as favoring Plaintiff. In contrast, both Defendants testified that they kept open minds until the witnesses spoke at the meeting. Even a member of the Prudential Committee was told by Defendant DiPasqua before the hearing that the Board had not made any decision yet. Remarkably, it was Plaintiff herself who had approached both Defendants DiPasqua and Sanborn prior to the hearing to obtain their support for her version of events. There is simply no evidence whatsover to support the claim of bias by the Board of Water Commissioners.

9

The First Circuit has followed the Supreme Court precedent and permitted the supervisor who made the initial discharge decision to also render the final decision after an Appeals Board hearing. Brasslett v. Cota, 761 F.2d 827, 837 (1st Cir. 1985) (citing). The U.S. Supreme Court held that a decisionmaker who is involved in both investigative and adjudicative functions may not be presumed unconstitutionally biased. Withrow v. Larkin, 421 U.S. 35, 53-54 (1975). The First Circuit adopted the position that "a plaintiff alleging impartiality must overcome the presumption that administrators are 'men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances,' and must demonstrate an actual risk of bias or prejudgment." Brasslett, supra. The First Circuit has required "a specific demonstration of partiality" to support allegations of bias. Id.

In the present case, Plaintiff has not alleged, and cannot establish, that either Defendant DiPasqua or Sanborn harbored actual bias against her. In this case, there were no circumstances existed which might ordinarily give rise to an inordinate risk of bias: neither Defendant DiPasqua nor Sanborn had a pecuniary interest in the outcome of the plaintiff's employment discharge, nor did either have any animosity toward Plaintiff as a result of personal criticism or attacks. See Braslett, supra. To the contrary, both DiPasqua and Sanborn testified that they were waiting to hear the whole story during the hearing before making any decisions. The Courts have readily dispensed of claims of alleged actual bias as being insufficient to establish a due process violation. The Eighth Circuit rejected similar claims that a statement by two school board members that they could not think of anything that would have changed their vote to terminate the plaintiff did not show that the school board members had reached an irrevocable prejudgment so as to render it a denial of due process for them to hold the hearing. See Welch v. Barham, 635 F.2d 1322 (8th Cir. 1980). Similarly, the Tenth Circuit ruled that a Board of Regents presiding over the termination hearing for

a professor on charges of moral turpitude, were not unconstitutionally biased despite a written statement that the alleged acts of homosexual solicitation were "utterly unacceptable on a university campus" and that the regents supported the university administration in its curtailment of public solicitation of homosexual activity. Corstvet v. Boger, 757 F.2d 223, 229 (10th Cir. 1985). In the present case, given the total lack of evidence of bias held by Defendant Sanborn, and only the equivocal unsworn handwritten statement attributed to Defendant DiPasqua, any argument that the Defendants neglected to provide Plaintiff with an impartial decisionmaker must fail.

### 3. The Plaintiff Had Adequate Post-Deprivation Remedies

Even if plaintiff had an actionable property interest, the procedural due process claim would still fail because such a claim is not deemed complete when the property deprivation occurs; it is only complete when the state fails to provide due process. Zinermon v. Burch, 494 U.S. 113, 126 (1990). Due process usually requires that adequate process be provided before a property interest is deprived by state action. Cleveland Board of Education v. Loudermill, supra, 407 U.S. at 542. In some instances, however, the availability of remedies after a deprivation occurs will comport with due process requirements. Zinermon v. Burch, 494 U.S. 113 (1990). One circumstance under which the availability of post-deprivation remedies becomes relevant is where a property interest is allegedly divested by the "random and unauthorized" conduct of government actors. See Rumford Pharmacy v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992).

Here, the Plaintiff failed to plead that the available remedies under Massachusetts law were inadequate to redress any deprivation of property. This omission alone warrants dismissal of the procedural due process claim. Rumford Pharmacy, 970 F.2d at 999. The Plaintiff, however, cannot claim inadequate state remedies because the Massachusetts Legislature has provided administrative and State Court remedies to address the harm she allegedly suffered. Furthermore, in the present

11

case, Plaintiff did exercise the grievance procedures available under the Employee's Association contract. In fact, the Plaintiff sought further review of the denial of the grievance from the Massachusetts Board of Conciliation and Arbitration. The existence of these grievance procedures alone vitiates Plaintiff's due process claim. See, e.g. Wojcik v. Massachusetts State Lottery Com'n, 300 F.3d 92, 102 (1st Cir. 2002) (stating the full arbitration hearing under CBA satisfies post-deprivation due process); O'Neil v. Baker, 210 F.3d 41, 49 (1st Cir.2000)(same); see also Lewis v. Hillsborough Transit Auth., 726 F.2d 664 (11th Cir. 1983) (post-termination grievance procedure in CBA complies with due process).

Under Massachusetts Law, public employers, subject to the limitations under the so-called Tort Claims Act, are subject to the same tort claims as private employers. See Mass. Gen. L. ch. 258 § 2. The U.S. Supreme Court has ruled that when the State had an established tort claims procedure for those who have suffered a tortious loss at the hands of the State, there existed an adequate post-deprivation remedy providing due process. See Parratt v. Taylor, 451 U.S. 527, 543 (1981), overruled on other grounds Daniels v. Williams, 474 U.S. 327 (1986); see also Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding prison guard unauthorized intentional deprivation of property not violate due process clause because meaningful state law post-deprivation remedies); Ingraham v. Wright, 430 U.S. 651 (1977) (holding on-the-spot corporal punishment of students did not violate due process, even with sole remedy that of state law tort action). The First Circuit has held that where an employment dispute is essentially a simple action for breach of contract, the state law provides a complete and adequate remedy, and no federal due process claims exist. Casey v. Depetrillo, 697 F.2d 22, 23 (1st Cir. 1983).

In addition to state law tort or contract actions, there are other well-established state remedies available to review a municipal decision, such as an employment termination. See Mass. Gen. L.

12

c. 30A, §14 (providing person aggrieved by decision of local Commission or Board may appeal to the state superior court); Mass. Gen. L. ch. 249 § 4 (establishing Certiorari review). Indeed, the Supreme Judicial Court, defining the nature of "for cause termination," decided an employment case that originated as a complaint in the nature of certiorari seeking a review of a Town Manager's decision to terminate the superintendent of public works. McSweeney v. Town Manager, 379 Mass. 794, 401 N.E.2d 113 (1980). In addition, the Plaintiff in this case has taken advantage of the Massachusetts statutes and regulations that establish procedures for labor mediation by the State Board of Conciliation and Arbitration. See Mass. Gen. L. ch. 23C § 1 et seq. (establishing Board of Conciliation and Arbitration); Mass. Gen. L. c. 150, § 1 et seq. (duties of Board of Conciliation and Arbitration); 457 Code Mass. Reg. 3.00, et seq. (Rules for grievance mediation and arbitration).

That relief under the available under state law procedural remedies may be delayed, or that damages may be unavailable, does not render such remedies constitutionally inadequate. Licari v. Ferruzzi, 22 F.3d 344, 348 (1st Cir. 1994); see also DeVito v Chicago Part Dist., 972 F.2d 851 (7th Cir. 1992) (holding one-year delay in giving post-termination hearing on reasons for employment discharge did not violate employee's due process rights). Because it is the availability of the adequate post-deprivation remedy that is critical, whether or not the plaintiff took advantage of that remedy is irrelevant. Parratt v. Taylor, 451 U.S. 527, at 543-544, (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986) (holding plaintiff, who did not avail himself of state statutory remedy that, if used, could have compensated plaintiff for his alleged deprivation, failed to allege due process violation). These post-deprivation state law remedies were more than adequate to protect its due process rights, precluding this civil rights lawsuit.

### B. No Equal Protection Violation

In support of her Equal Protection claim, Plaintiff points to the purported treatment of her

co-worker, Kathi Semple, as someone similarly situtated yet treated differently. See Pl.'s Compl. ¶¶ 46-47. Plaintiff is not claiming she was treated differently due to any suspect classification such as race, gender, creed, etc. Instead, she contends that Ms. Semple has been "insubordinate and screamed and swore at the Defendant Gay." See Pl.'s Compl. ¶ 46. As discussed below, however, the defendant's conduct towards Plaintiff had a rational basis and Ms. Semple was not similarly situated to Plaintiff.

The Fourteenth Amendment of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The U.S. Supreme Court long ago noted that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by [the state's] improper execution through duly constituted agents." Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918). Since the Fourteenth Amendment's adoption, the United States Supreme Court has developed three levels of judicial review for Equal Protection cases: (1) strict scrutiny, (2) heightened (or intermediate) scrutiny, and (3) rational basis. See, e.g. Kahawaiolaa v. Norton, 386 F.3d 1271, 1277 (9th Cir. 2004) (discussing equal protection cases subject to one of three levels of "scrutiny" by courts: strict scrutiny, intermediate scrutiny, or rational basis review). Here Plaintiff is not claiming discrimination based upon membership in a protected class, thus rational basis analysis applies.

Under the rational basis test, courts defer to legislative classifications unless the court cannot conceive any grounds on which to justify them. McDonald v. Bd. of Election Comm'rs, 394 U.S. 802, 809 (1969). Here, courts grant considerable deference to the government. See Mathews v. Lucas, 427 U.S. 495, 510 (1976). The Supreme Court has held that "[u]nder our rational basis

standard of review, 'legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'" Lawrence v. Texas, 539 U.S. 558, 579 (2003)(O'Connor, J. concurring).  The Plaintiff, as the person attacking the rationality of the governmental classification, has the burden "to negative every conceivable basis which might support it." F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 315 (1993).  The First Circuit has described "the legal test ... [as] an exceptionally deferential one."[2]  Wojcik v. Mass. State Lottery Com'n, 300 F.3d 92, 104 (1st Cir. 2002).  Reviewing the dismissal of a Plaintiff's Equal Protection claim, the First Circuit recently reiterated it must "consider whether [Plaintiff] sufficiently alleged that he was treated differently from others 'similarly situated' and that there was no rational basis for the treatment." Campagna v. Mass. Dept. of Envtl. Prot., 334 F.3d 150, 156 (1st Cir. 2003).

### 4. Plaintiffs' Equal Protection Claim Fails, Even Viewed as a "Class-of-One"

#### a. There was a Rational Basis for the Termination of Plaintiff

Under the "exceptionally deferential" rational basis test, the governmental Defendant's "conduct need only bear a reasonable relationship to some proper object." Bauza v. Morales Carrion, 578 F.2d 447, 450 (1st Cir.1978)(citations omitted).  In the present case the rational basis for the termination of Plaintiff.  Plaintiff admits to having told her supervisor over the radio that she

---

[2] Claims for Equal Protection violations have recently received impetus, not necessarily justified, from the Village of Willowbrook decision. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000).  There, the Supreme Court stated "[o]ur cases have recognized successful equal protection claims brought by a 'class of one' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Willowbrook, 528 U.S. at 563.  Indeed, all the Willowbrook Court held was the Plaintiff's allegations were sufficient to survive a Motion to Dismiss under Rule 12(b)(6). In the First Circuit, a number of decisions after the Village of Willowbrook decision reflect that the previous Equal Protection analysis remains unchanged.  See, e.g. State Police Automatic Ret. Ass'n. v.DiFava, 317 F.3d 6 (1st Cir. 2003) (holding no equal protection claim because not allege other similarly situated state police officers); Wojik v. Mass. State Lottery Comm'n., 300 F.3d 92 91st Cir. 2002) (rejecting equal protection claim of terminated Lottery employee).

15

would give the Superintendent " a ride home on the front end of her bumper." This was interpreted as a threat by the Superintendent to rum him over. The two Board members who voted to terminate Plaintiff found that this threat did occur, and that it merited the vote to terminate. In <u>Wojcik</u> the Court found that in applying the "exceptionally deferential" rational basis test, supported the termination of that Plaintiff for grounds which included "the public perception of the Lottery." <u>See Wojcik</u>, <u>supra</u> at 105. The present case of threats made by an employee were taken seriously by the Board and afford a rational basis for the termination of Plaintiff.

### b. **No Evidence of Similarly Situated Employees Treated Differently**

To establish and Equal Protection claim, Plaintiff must prove both that he "has been intentionally treated differently from others similarly situated <u>and</u> that there is no rational basis for the difference in treatment." <u>Village of Willowbrook</u>, <u>supra</u>, 120 S. Ct. at 1074 (emphasis added). Thus, because the Defendant's conduct in the present case had a rational basis, the court need not go any further. Should the Court inquire, however, there is no evidence of similarly situated contractors whose permit applications were not denied or delayed.

"The determination as to whether individuals are 'similarly situated' for equal protection purposes is an amorphous one." <u>Tapalian v. Tusino</u>, 377 F.3d 1, 6 (1st Cir. 2004). "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.'" <u>See</u> <u>Barrington Cove Ltd. P'ship v. R.I. Hous. and Mortgage Fin. Corp.</u>, 246 F.3d 1, 8 (1st Cir. 2001) (citation omitted). In the present case, there is simply no evidence that Plaintiff was treated differently than similarly situated

employees. The only evidence to which Plaintiff points is that Kathi Semple purportedly yelled and swore at the Superintendent but was not disciplined. The Summary Judgment record establishes that this did not occur. Instead, Ms. Semple and the Superintendent had a professional disagreement over the snow shoveling by department employees, and nothing more came of the issue. In contrast, the Plaintiff here persisted in a heated confrontation with the Superintendent after he twice left the room to permit her to cool down. The Plaintiff then made a comment over the radio which the Superintendent interpreted as a threat to run him over. When the Superintendent returned to the office, he sent Plaintiff home with pay, yet she remained to again confront him in the parking lot. In no way are Plaintiff and Kathi Semple's interactions with the Superintendent alike, let alone sufficient to make them "similarly situated" for equal protection analysis. See, e.g. Wojcik v. Mass. State Lottery Com'n, 300 F.3d 92, 104 (1st Cir. 2002) (employees not similarly situated); Campagna v. Mass. Dept. of Envtl. Prot., 334 F.3d 150, 156 (1st Cir. 2003) (same).

### c. No Evidence of "Malicious Bad Faith" "Illegitimate Ill Will" or "Animus"

Even assuming arguendo Plaintiff proved there are other similarly situated employees, as the Massachusetts Appeals Court recognized, the "allegation that others similarly situated obtained permits is not, without more, a denial of equal protection of the laws. Allegations of clear and intentional discrimination are required." Rosenfeld v. Board of Health of Chilmark, 27 Mass.App.Ct. 621, 628-629, 541 N.E.2d 375 (1989). The First Circuit requires "proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations." Rubinovitz v. Rogato, 60 F.3d 906, 909-910 (1st Cir. 1995) (citations omitted). The Supreme Court articulated that "[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be

present in it an element of intentional or purposeful discrimination." Snowden v. Hughes, 321 U.S. 1, 8 (1944). Here there is no such evidence of purposeful discrimination for unlawful reasons.

Although the Supreme Court did not reach the issue in Village of Willowbrook, the First Circuit has recognized that an Equal Protection claim may lie where plaintiff can prove that he was treated differently than others similarly situated, and that such disparate treatment "was based on ... malicious or bad faith intent to injure a person."[3] Rubinovitz v. Rogato, 60 F.3d 906, 909-910 (1st Cir. 1995). The First Circuit in Rubinovitz noted two limitations to such claims: "First, bad-faith or malicious-intent-to-injure cases are infrequent ... [and] Second, 'the malice/bad faith standard should be scrupulously met.'" Id. Later the First Circuit clarified that in Rubinovitz, "plaintiff had adduced 'only barely enough evidence'" even though "there was not the slightest vestige of any legitimate government purpose served" by Defendant's conduct. Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000). Thus Rubinovitz "illustrates the extreme 'malicious orchestrated campaign' needed to surmount the constitutional threshold." Id. (emphasis added). Furthermore, the Plaintiff cannot rest upon mere unsupported allegations of "bad faith" or "malicious intent" but must "present a motive to explain why the [Defendant] officials would treat them arbitrarily or irrationally." Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002). In the present case there was no "extreme malicious orchestrated campaign" by Defendants, whose decisions did serve a legitimate government purpose of ensuring a safe and orderly workplace.

### C. The Individual Defendants Are Entitled to Qualified Immunity

Under federal law, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established

---

[3] This element of "malicious or bad faith intent to injure" is similar to the standard suggested by Judge Breyer in his concurrence which was rejected by the Village of Willowbrook majority. See Village of Willowbrook, supra 528 U.S. at 565 (Breyer, J. concurring).

18

statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity, which is a question of law, is an issue that is appropriately decided by the court during the early stages of the proceedings and should not be decided by the jury." Tatro v. Kervin, 41 F.3d 9, 15 (1st Cir. 1994); see also Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987) (motions for summary judgment based on qualified immunity should be favored). This is so because "[t]he entitlement is an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The standard for judging a motion for summary judgment, or a motion to dismiss, brought by a government official seeking qualified immunity is "whether a reasonable official could have believed his actions were lawful in light of clearly established law." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994). Prior to determining whether a constitutional right was "clearly established" at the time of the alleged violation, a court must first decide "whether the plaintiff has asserted a violation of a constitutional right at all." Seigert v. Gilley, 500 U.S. 226, 232 (1991). In the present case the Plaintiff has articulated the specific Constitutional rights at issue as the due process right and the right to equal protection. See Pl.'s Compl. Counts I-II. As discussed above, there is no due process or equal protection violation as a matter of law, thus the individual defendants cannot be held liable.

Inquiring further, the individual defendants enjoy qualified immunity from suit. According to Supreme Court precedent, merely negligent actions or omissions by state officials do not deprive a person of life, liberty or property under the Fourteenth Amendment. Daniels v. Williams, 474 U.S. 327 (1986). Rather, a violation of the Due Process Clause can only occur when a state official acts with deliberate, reckless or callous indifference to the constitutional rights of the plaintiff. Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989); Febus-Rodriquez at

92. "An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Id. The fact that the Defendants sought the advice of counsel, before conducting the disciplinary hearing is a further factor for the court to consider that entitles them to qualified immunity. See Cox v. Hainey, 391 F.3d 25, 34-35 (1st Cir. 2004). In the present case the actions of Defendants DiPasqua, Sanborn and Gay were objectively reasonable and not indifferent to Plaintiff's constitutional rights. By any measure, the conduct of the hearing of June 30, 2004 and the decision to terminate Plaintiff were "objectively legally reasonable." No reasonable public official would have reasonably believed that disciplining Plaintiff after providing notice of a hearing, allowing Plaintiff and her attorney to address the decisionmaker, and allowing other witnesses to be heard would have violated the Plaintiff's constitutional rights. The Defendants' conduct was objectively legally reasonable, and therefor the individually named Defendants are entitled to qualified immunity from this lawsuit.

## IV. CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Honorable Court grant its Motion for Summary Judgment as to all counts of Plaintiff's Complaint.

Respectfully submitted,
The Defendants,
ANDREW DIPASQUA, MICHAEL SANBORN, WILLIAM F. GAY, III, and the ONSET FIRE DISTRICT,
By their attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**


 /s/ John J. Cloherty III
John J. Cloherty III, BBO#566522
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950