U.S. DISTRICT COURT
DISTRICT OF MASSACHUSETTS
DOCKET NO. 05-10033 NG

LORI ANN MORAN, PLAINTIFF VS. ANDREW DIPASQUA, MICHAEL SANBORN, WILLIAM F. GAY, III and the ONSET FIRE DISTRICT, DEFENDANTS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STATEMENT OF THE CASE

Statement of Facts

    Please see Plaintiff's Rule 56.1 Concise Statement of Facts.

Prior Proceedings

    The Plaintiff claims that the defendants violated her rights to due process of law and equal protection of the law as guaranteed by the Fourteenth Amendment of the U.S. Constitution when they terminated her from employment as a clerical assistant in the Onset Water Department.

    The Complaint was filed on or about December 1, 2004 in the Plymouth Superior Court and removed to this court by the Defendants on or about January 6, 2005.

    The Defendants have moved for summary judgment pursuant to F.R.Civ.P. 56.

I.    The Rule

    F.R.Civ.P 56 provides in part that:

"judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

II.   Due process claim
  A.   Liberty Interest

In the case of Wisconsin vs.Constantineau, 400 U.S. 433,437 (1971), the U.S. Supreme Court held that:

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

One of the allegations made against the Plaintiff was that she threatened the Defendant Gay with bodily harm, which would clearly affect her good name and reputation.   These allegations were made public at the June 30, 2004 Onset Board of Water Commissioners meeting.   Concise Statement of Facts, paras. 16 and 17.

Therefore, the due process requirements of the Fourteenth Amendment are invoked in this case.

  B.   The Process

The level of process that is due depends upon:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.."
Mathews vs.Eldridge, 424 U.S. 319, 334-335 (1976).

The first two factors were discussed in the case of Cleveland Board of Education vs. Loudermill, 470 U.S. 532 (1985) as follows [citations omitted]:

First, the significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood.  While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job.

Second, some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes.   Even where the facts are clear, the appropriateness or necessity of the discharge may not be in such cases may not be; in such cases, the only meaningful opportunity to invoke the decision of discretion of the decisionmaker is likely to be before the termination takes effect."

Accordingly, the Plaintiff was entitled to pre-termination notice and an opportunity to be heard.

The Defendants contend that the meeting on June 30, 2004 gave the Plaintiff all the process that she was owed.

The process afforded the Plaintiff was not meaningful.

The notice was not adequate.  The April 27, 2004 statement of the Defendant Gay lists a whole litany of alleged conduct of the Plaintiff.  One of the alleged claims of misconduct evidently did not occur on April 27, 2004.  In one paragraph of the statement, the Defendant Gay claims that the Plaintiff made false accusations against other employees.  The Plaintiff should not be forced to guess which conduct might lead to her termination. Concise Statement of Facts, paras. 16 and 17.  In fact, though, the Board of Water Commissioners stated they would  consider only  so much of the statement which alleged misconduct on April 27,2004, Gay's whole statement was accepted at the June 30, 2004 meeting.   Affidavit of Margaret A. Ishihara, Transcript of June 30. 2004 meeting, p. 113. The Plaintiff was not allowed to cross examine witnesses.   Though there is no absolute independent right to cross examination other than in criminal cases, such a right is recognized as a fundamental aspect of procedural due process.  Brock vs. Roadway Exp., Inc. 481 U.S. 252 (1987); Goldberg vs. Kelly,  397 U.S. 254, 268; 90 S.Ct. 1011 *(*1970).  In the context of this case, the elimination of this right meant the opportunity to be heard was not meaningful.  The witnesses who testified against the

3

Plaintiff gave contradictory statements. The Defendant Gay stated that the Plaintiff followed him into the so-called loading dock area and continued to badger him. The witnesses, Kathi Semple and Peter Murphy, made no mention of this conduct. Three of the witnesses (Kathi Semple, Chris Poirier, and Kerry Jay Semple) are related. Cross examination would have emphasized these points. In fact, the Defendant Gay testified at this deposition in this case to a different sequence of events than he testified to at the June 30, 2004 meeting. The two versions are set forth below in summary form:

<u>Deposition version, Deposition of William Gay, pp. 41-49, Concise Statement of Facts, para. 17, Exhibit #2 to Statement</u>

 Moran at her desk, objects to Gay calling her "she" and "her"
 Moran follows Gay to loading dock, knew Murphy and Kathi Semple were already out there
 Gay to Commissioners office, Murphy follows him
 Moran back at her desk., tells Gay to "shut up"
 Gay goes to loading dock again
 Gay asks Murphy did you hear her tell me to shut up, Murphy says yes
 Murphy leaves building
 Gay leaves building

<u>April 27, 2004 written statement version, Concise Statement of Facts, para. 17, Plaintiff's Affidavit, Exhibit "F"</u>

 Moran at her desk, objects to Gay calling her "she" and "her"
 Gay leaves main office for 5 minutes at most (doesn't say to where), does not say Moran followed him
 Gay comes back into main office
 Gay goes to commissioners' office
 Gay goes to main office (Kathi Semple's desk)
 Moran continues to badger him
 Moran tells Gay to "shut up"
 Gay goes to loading dock, Moran follows him and continues to badger him
 Gay leaves building.

4

The Plaintiff was not allowed to bring up anything other than the events of April 27, 2004, which robbed her of the opportunity to show bias on the part of the witnesses against her.   Concise Statement of Facts, Para. 10.  Kathi Semple had told the Plaintiff "don't come to me with your problems".   Arguably, the Defendant Gay had a deteriorating relationship with the Plaintiff because of the incident on March 2004 for which the Defendant Gay may have assessed blame to the Plaintiff.

There have been at least two occasions in which Kathi Semple yelled and swore at the Defendant Gay and was not disciplined.   Presentation of this evidence would have tended to show that the Defendant Gay was biased against the Plaintiff because he singled her out for disciplinary action.

A basic tenet of due process is an impartial tribunal.  Goldberg vs. Kelly, 397 U.S. 254 (1970); Marshall vs. Jerrico, Inc. 446 U.S. 238, 242 (1980)

The Defendant DiPasqua based his decision on extraneous factors outside of the process.   He considered a supposed threat to sue him by the Defendant Gay and the employees other than the Plaintiff.    He was accused of making up his mind ahead of the hearing by Maurice Harlow, and he did not deny that accusation. FRE  801 (d) (2). Instead, in response to this accusation, he stated that he had to side with the Defendant Gay because the Defendant Gay had the licenses.   Concise Statement of Fact, para. 12.

The cost to the Water Department would not have been greater than any cost incurred for the meeting held on June 30,2004, if they had afforded the Plaintiff the right to cross exam
witnesses and present evidenced of events which occurred before April 27,2004.

C.    Post deprivation process

5

The defendants argue that the Plaintiff had rights under G.L. c. 30A:14, which applies to "agencies".  "Agencies" are clearly defined as state agencies.  See G.L. c. 30A:1.

The Defendants also argue that G.L. c. 249:4 affords the plaintiff relief.  The standard in a complaint in the nature of certiorari would be whether the defendants' actions were arbitrary and capricious.  Such relief entails a review of the administrative record but not a hearing de novo.  As stated above when a parson's job is at stake the adequacy of the pre deprivation hearing is paramount.

The Defendants have challenged the Plaintiff's right to proceed with her grievance mediation in the Massachusetts Board of Conciliation and Arbitration, so they should not be heard to argue that this process affords her due process of law.  The grievance mediation is the step before arbitration, and the employee association agreement specifically states that the employee association and the Board of Water Commissioners are the parties that initiate the arbitration.

Further, "Where an employee is fired in violation of his due process rights, the availability of post-termination grievance procedures will not ordinarily cure the violation."  Cotnoir vs.University of Maine Systems, 35 F 3d. 6 , 13 (1994) citing Kercado  vs. Aponte-Roque, 829 F. 2d,255, 263 ( 1st.Cir.1987).

II.     Equal Protection

6

A class of one was recognized in the case of Village of Willowbrook vs.Olech, 528 U.S. 562, 564 (2000):

"where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

There is no mention in Willowbrook of "malicious bad faith", "illegitimate ill will", or "animus.

      A.      Plaintiff intentionally treated differently from others similarly situated

"The determination as to whether individuals are "similarly situated" for equal protection purposes is an amorphous one. *See Barrington Cove*, 246 F.3d at 8**. "**The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.'"  Tapalian vs. Tusino, 377 F3d 1, 6 (2004).

In the Plaintiff's Concise Statement of Facts evidence is offered which would show that the office manager, Kathi Semple, was a person similarly situated.   In February 2003, Ms. Semple yelled and swore at the Defendant Gay, he Water Superintendent and her immediate supervisor.    She described her actions to the Plaintiff by saying "I reamed him a new asshole".    She was clearly insubordinate and most likely threatening, so her conduct certainly arose to the same level of alleged conduct on the part of the Plaintiff.    Concise Statement of Facts, para. 9.  She yelled and swore at the Defendant Gay another time in March 2004 going so far as to say he was telling a "fucking lie".  Again, clearly insubordinate.  Nonetheless no disciplinary action was

7

taken against Kathi Semple, showing that the Plaintiff had been singled out. Concise Statement of Facts, para. 11.

    B.    No rational basis for difference in treatment

The Defendants argue that the Plaintiff threatened the Defendant Gay with bodily harm and that was the basis for the termination. However, they do not deny that Gay did not call the police, they do not deny that the others laughed when the Plaintiff made the statement that she would give Gay a ride home on the bumper of her car, and they do not deny that the Defendant Gay called her statement a remark or a snide remark and not a threat. Concise Statement of Facts, paras. 13 and 14. There is a genuine issue of material fact on the issue of whether the statement made by the Plaintiff constituted a threat of bodily harm as contended by the Defendants.

Further, there is evidence that actions of at least one of the Water Commissioners, the Defendant DiPasqua was not driven by considerations of the Plaintiff's alleged conduct but by extraneous considerations. The Defendant DiPasqua considered the licenses held by the Defendant Gay, alleged threats of a lawsuit by the other employees, and his relationship with his fellow firefighters in making his decision to vote to terminate the Plaintiff. Concise Statement of Facts, para. 12.

III.    Qualified Immunity

    Generally,
"…government officials performing discretionary

functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow vs. FitzGerald, 321 U.S. 1, 8 (1994).

The three step sequential analysis is:

1. whether the plaintiff's allegations, if true, establish a

constitutional violation;

2. whether the constitutional right at issue was clearly established at the time of the

putative violation; and

3. whether a reasonable officer, situated similarly to the defendant, would

have understood the challenged act or omission to contravene the discerned constitutional

right.

See Pagan vs. Calderon, docket no. 05-1811, (1st Cir. 2006)(decided May 16, 2006).

    For the reasons stated above the Plaintiff has set forth claims under the due process and equal protection clauses of the Fourteenth Amendment.

    The right to a meaningful pre termination hearing was clearly established at the time of the June 30, 2004 meeting at which the Plaintiff was terminated.

    For the reasons stated above the denial of the right to cross examination and the denial of the right to otherwise challenge the witnesses credibility was unfair, which should have been understood by the defendants.

    The right to an impartial tribunal was also clearly established.

The Defendant DiPasqua considered extraneous matters, and the Defendant Sanborn stated that he had to stand behind the Superintendent [Defendant Gay].  The Defendant DiPasqua had also made up his mind before he voted to terminate the Plaintiff from employment

Therefore, the defendants were not entitled to qualified immunity.

CONCLUSION

For the reasons stated above the Defendants' Motion for Summary Judgment should be denied.

PLAINTIFF
LORI ANN MORAN
By her Attorney
s/ Margaret A. Ishihara
Margaret A. Ishihara, BBO#247930
Law Office of Margaret A. Ishihara
86 Church St.
Mattapoisett, MA. 02739
Telephone: (508) 758-6981
Date: 2 June 2006

CERTIFICATE OF SERVICE

      I hereby certify that I have served the within document by mailing a copy first class mail postage pre paid to:

John J. Cloherty, III
Pierce, Davis, & Perritano, LLP
Ten Winthrop Square
Boston, MA. 02110

Date: 2 June 2006					/s Margaret A. Ishihara
						Margaret A. Ishihara