```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
 _____
                                        )
 LORI ANN MORAN,                        )
      Plaintiff,                        )
                                        )
      v.                                )    C.A. No. 05-10033-NG
                                        )
 ANDREW DIPASQUA, MICHAEL SANBORN,      )
 WILLIAM F. GAY, III, and the           )
 ONSET FIRE DISTRICT,                   )
      Defendants.                       )
 _____ )
 GERTNER, D.J.:
```

**MEMORANDUM AND ORDER RE:**
**MOTION FOR SUMMARY JUDGMENT**
September 27, 2006


I.   **INTRODUCTION**

Plaintiff Lori Ann Moran ("Moran") filed suit against the Onset Water Department and its three commissioners, Andrew Dipasqua ("Dipasqua"), Michael Sanborn ("Sanborn"), and William Gay ("Gay"), challenging her termination for comments she had made to Gay on April 27, 2004. She alleged that her termination violated her rights under the Due Process clause of the Fourteenth Amendment by failing to provide adequate pre-termination proceedings and by allowing statements at the hearing that deprived her of her liberty. While Moran feels aggrieved by her discharge, she is not directly challenging the merits of her discharge -- that the defendants did not have the right to discharge her because of her conduct. Rather, her focus in the Due Process claim is about the procedural rights due her.

The problem with this claim, however, is a fundamental one. In order to trigger the protections of the Due Process clause at all, plaintiff must establish what the law defines as a "property" interest in her employment. As a matter of law, as an at-will employee, she has not established that interest. Nor is it clear that she did not receive all the process that was due.

Moran also alleges an Equal Protection violation, that she was treated differently than a similarly-situated employee. The employee she identified for comparison is her supervisor, Kathi Semple ("Semple"), arguably not someone similarly-situated at all. In any event, even if the comparison were appropriate, defendants need only show that the differences in treatment as between the two were rational. On the facts of this record, defendants do so.

Defendants' motion for summary judgment [document #27] is therefore **GRANTED**.

**II.  BACKGROUND**

Plaintiff worked for the Onset Water Department (the "Department") as a clerical assistant in a five person department. On April 27, 2004, when plaintiff had been working at the Department for about a year,[1] she became upset with

---

[1] Plaintiff's statement of facts indicates that her employment started in 2002, but defendants' facts indicate she began in 2003. In plaintiff's deposition she states she was employed for fifteen months prior to her termination in 2004. A fifteen month employment period would put her start date in 2003.

Department Superintendent William Gay after overhearing him refer to her as "she" and "her" in a conversation with Office Manager Kathi Semple. Gay indicated that he did not understand why plaintiff was upset, and he left the room. When defendant Gay returned, plaintiff repeated that she "hate[d]" being referred to as "she," to which Gay responded, "get over it." Plaintiff persisted, saying she "would not get over it." She began to tell Gay to "shut up," but stopped herself. They did not interact again until 4:00 p.m., when Gay called Semple to ask for a ride home. Plaintiff took the phone and told Gay "I can give you a ride home on the bumper of my van." In response, Gay warned Moran: "If you can't control your snide remarks, you will not work here anymore."

Following the April 27 incident, the Department placed Moran on administrative leave. On June 17, 2004, she was notified that a hearing would be held two weeks later to determine possible disciplinary actions against her as a result of the April 27 incident.

At the June 30 termination hearing, Moran was represented by counsel. Four Department employees, including Semple, testified. Plaintiff was not allowed to cross-exam the witnesses, but was permitted to make a statement on her own behalf and to present her own evidence, including witnesses. She tried to discuss prior incidents between Semple and Gay, incidents in which

Semple, she claimed, was rude to Gay, but was not disciplined, much less terminated.  However, the commissioner prevented her from doing so and she was limited to the events that occurred on April 27, 2004.  After the hearing, the Commissioners voted to terminate her employment.

Following her termination, Moran filed a grievance with the Onset Board of Water Commissioners, which was denied.  She requested that the Department's Employee Association ("the Association") file a grievance on her behalf; the Association refused.  The Commissioners declined to review her request for mediation, claiming it must be filed by the Association, and not by an individual.  Moran then brought her request to the Massachusetts Board of Conciliation and Arbitration, where it was pending as of the date of the summary judgment submissions.  Moran currently works part-time for Capeway Frame & Trailer.

### III. ANALYSIS

Moran alleges that she was deprived of property without due process of law, that she was deprived of liberty without due process of law, and that her right to equal protection was violated.  I will address each of these claims in turn.

#### A. Standard of Review

Defendants have moved for summary judgment on all counts.  A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. <u>Hinchey</u>, 144 F.3d at 140 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). After the moving party shows that there is an absence of evidence to support the non-moving party's case, the burden shifts and the nonmoving party must demonstrate that a trier of fact reasonably could find in his or her favor. <u>Id.</u> In deciding a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party. <u>Douglas v. York County</u>, 360 F.3d 286, 290 (1st Cir. 2004).

### B. <u>No Deprivation of Property Without Due Process</u>

Moran claims her termination violated the Due Process clause of the Fourteenth Amendment because she was not allowed to cross-examine the witnesses at her hearing and the Commissioners were not a fair and impartial tribunal. The question is not whether it was wrong or right to terminate Moran for a single incident on April 27, 2004. The question, in effect, is whether the defendants followed constitutional procedures in reviewing her claim.

But there is a prior question that Moran must answer before I can evaluate whether the process she received satisfies the Due

Process Clause:  Did Moran have an interest in her job as an office clerk sufficient to trigger the obligations of the Due Process clause?  Only employees whom the law characterizes as having a "property interest" in their employment have a right to Due Process before they can be terminated.  See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538 (1985); O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000).

To have a property interest in continued employment, the employee must have "more than a unilateral expectation of it.  [She] must, instead, have a legitimate claim of entitlement to it."  Board of Regents v. Roth, 408 U.S. 564, 577 (1972); see also Bennett v. City of Boston, 869 F.2d 19, 21 (1st Cir. 1989).  This property interest could be conveyed by contract or by the employer's policies, such as an employee handbook or collective bargaining agreement.  Board of Regents v. Roth, 408 U.S. 564, 578 (1972).  State law may also determine the legitimacy of expected continued employment.  See Loudermill, 470 U.S. at 538; see also Mard v. Town of Amherst, 350 F.3d 184, 189 (1st Cir. 2003).

Under Massachusetts law, at-will employees have no property interest in their jobs.  See Ziskend v. O'Leary, 79 F. Supp. 2d 10, 14 (D. Mass. 2000), citing Ossinger v. City of Newton, 533 N.E.2d 228, 231 (Mass. App. Ct. 1989).  An employee is considered at-will when her employment contract does not contain a definite

period of employment.  See Jackson v. Action for Boston Community Dev., 525 N.E.2d 411, 412 (Mass. 1988).

Moran was an office clerk, on the job for eighteen months, hired on an "at-will" basis.  She had no employment contract, let alone a contract that specified a term of employment. Nothing in the Employee's Association Agreement suggested that Moran was more than an employee at-will.  As such, she has not demonstrated a property right that would entitle her to Due Process.  A public employer may choose to provide a hearing before termination, but unless the employee has a property interest in the job, the employer is not constitutionally compelled to do so.

Even if Moran had a property right in her employment, she could not prevail because she received all the process that was due.  In the context of termination from public employment, due process requires notice and an opportunity to be heard.  See Mard v. Town of Amherst, 350 F.3d at 189 (quoting Dusenbery v. United States, 534 U.S. 161, 167 (2002)).

Moran received adequate notice.  The notice requirements ensure that an individual is aware of the charges against her so that she can adequately prepare for the hearing.  See id., citing Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978). Moran claims that she did not receive adequate notice of the charges against her, despite defendants' multiple notifications. In addition to the verbal warning on April 27 that she would be

fired if she could not control her "snide remarks," Moran received written notice, dated April 29, 2005, stating that she was "on administrative leave for events that occurred on April 27, 2004 and are pending for disciplinary action." (Pl. Aff. Ex. B at 4.) She also received a letter from Gay dated May 3, 2004, stating that she was on leave "for disregard of a direct order from the Superintendent, and for continuing to pursue the matter on April 27, 2004," and a second letter, dated June 17, 2004, notifying her of the date of and evidence allowed at the hearing. These letters were explicit in their charges and notification of the hearing. That notice was sufficient.

Moran also alleges that her pre-termination hearing did not provide adequate process because she was not allowed to cross-examine witnesses. An employee must be given an opportunity to respond prior to termination, but the pre-termination hearing "need not be elaborate."[2] Loudermill 470 U.S. at 544-45; see also Brasslett v. Cota, 761 F.2d 827, 836 (1st Cir. 1985). The amount of process required prior to termination depends, in part, on the available post-termination procedures. Brasslett, 761 F. 2d at 836.

Loudermill requires only that an employee be given "an opportunity to present [her] side of the story." Loudermill, 470

---

[2] Prior to the hearing, Moran was on paid leave, so this period did not violate due process. See, Loudermill, 470 U.S. at 544-55.

U.S. at 546.   Before termination, an employee with a property interest in his employment "is entitled to an explanation of the substance of the employer's evidence against him so that he can present his side of the story."  Cotnoir v. University of Me. Sys., 35 F.3d 6, 12 (1st Cir. 1994) (citing Loudermill, 470 U.S. at 546).

The prohibition on cross-examination of the witnesses did not prevent Moran from providing her own account of the events; she was allowed an oral statement, exhibits, other evidence, and her own witnesses.  Furthermore, limiting the subject of the hearing to events of April 27, 2004, the evening in which she was involved, does not render the hearing meaningless, as Moran contends.

Moran also contests the post-termination procedures.  The scope of due process involves a balancing test between pre- and post-termination procedures.  See Brasslett, 761 F.2d at 836. Considered in light of the significant weight of the pre-termination process Moran received, it is clear she received sufficient post-deprivation procedures.  Moran's Employee Association Agreement provided for grievance procedures, and she has also sought review of her termination with the Massachusetts Board of Conciliation.

Finally, Moran asserts that she did not receive due process because the adjudicatory tribunal was biased against her.  The

First Circuit has held "[a]n impartial adjudicator is elemental to due process." Brasslett, 761 F.2d at 837 (finding that a decision was not inherently biased simply because the same person made "both the initial discharge decision and the final decision after the Appeals Board hearing"). However, a decision-making body has a presumption of "conscience and intellectual discipline," and the plaintiff must demonstrate actual risk of bias or prejudgment. Id. (quoting United States v. Morgan, 313 U.S. 409, 421 (1941)). In order to dispute the presumption of impartiality, a plaintiff must provide evidence to demonstrate an adjudicator's interest in the outcome of the case or an animosity toward the plaintiff. See Brasslett, 761 F.2d at 837. Plaintiff here has shown neither.

Moran finds bias in the fact that after the hearing, Commissioner Michael Sanborn indicated his belief that the Commissioners must stand behind Superintendent Gay, and in the revelation that DiPasqua spoke with another Department employee before the hearing and said he was "damned if I do, and damned if I don't" in deciding whether to fire Moran. After the hearing, DiPasqua also allegedly stated "we didn't have a choice. [Gay] has the licenses, and it would be hard to find someone to take his place."

These comments about the decision do not demonstrate actual bias against plaintiff. In fact, they merely disclose the

-10-

difficulty of the decision-making process -- weighing the judgment of a supervisor in whom the Commissioners had confidence, against the employee's interests, considering the disruption attendant on the decision to terminate or not to terminate.

C.   **No Deprivation of Liberty Without Due Process**

Moran next alleges that her termination violated her liberty interest. To implicate a liberty interest, the employer's action must risk "seriously damag[ing] his standing and associations in his community." Board of Regents v. Roth, 408 U.S. at 573. The individual's "good name, reputation, honor, or integrity" must be at stake. Id. (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)); see also, Perry v. Sinderman, 408 U.S. 593 (1972) (finding that an employee may be deprived of a liberty interest where the employer's action was stigmatizing). That is, an individual has a "protected due process right against false government designation" made without an opportunity to challenge. Brown v. Ives, 129 F.3d 209, 212 (1st Cir. 1997). A liberty interest may be threatened, for example, where "the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination." Owen v. Independence, 445 U.S. 622, 662 (1980); see also McAvoy v. Shufrin, 518 N.E.2d 513, 517 (Mass. 1988) (noting that under Massachusetts law, defamation requires a "false and defamatory

written communication of and concerning the plaintiff"). Furthermore, "the stigmatizing statements or charges must have been intentionally publicized by the government." Burton v. Town of Littleton,426 F.3d 915 (1st Cir. 2005) (quoting Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 103 (1st Cir. 2002)). If a false and defamatory statement has been made, the employee is entitled to a "name clearing" hearing.  See Owen, 445 U.S. at 662.

   Moran's liberty interest claim fails as a matter of law for a simple reason:  she does not allege that the charges against her were false. Indeed, Moran admits to the material elements of her interaction with Gay on April 27, 2004.  She is only claiming that those facts do not justify her discharge.  Thus, the circumstances of Moran's discharge hardly  "blacken [her] name as to impair [her] liberty interest in [her] professional reputation."  Owen, 445 U.S. at 662.  Plaintiff is currently employed and she has not alleged that her reputation was ruined so as to impair her liberty interest in her professional reputation.  In addition, even if the statements made about Moran were false in any way, they were never intentionally publicized outside her termination hearing.  Finally, Moran received an opportunity to tell her side of the story at the hearing.  This complies with the requirement of a "name clearing" hearing as required by Owen. 445 U.S. at 662.

Because Moran fails to provide evidence to support a claim of defamation or a claim of harm to her professional reputation, and because she received a hearing on the charges against her and was allowed to refute them, defendants did not violate her liberty interest.

### D. No Equal Protection Violation

Plaintiff's Equal Protection claim fails as well because defendants had a "rational reason" for her termination. Moran has not alleged that she was a member of a protected class or that her fundamental rights were violated, which would trigger a higher standard. See Medeiros v. Vincent, 431 F.3d 25, 29 (1st Cir. 2005).

To prevail, Moran must show that she was intentionally treated differently from other similarly-situated individuals and that there was no rational basis for the differential treatment. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

First, plaintiff must "identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate the [plaintiff] w[as] singled . . . out for unlawful oppression." Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995) (internal quotations omitted).

Moran alleges that she was similarly-situated to Semple, who was never disciplined for yelling and swearing at Gay. However,

Semple was Moran's superior.  As the Office Manager, she had a different working relationship with Gay than did Moran.

Even if Moran and Semple were similarly- situated, Moran must show that there is no "conceivable state of facts that could provide a rational basis for the classification."  Bd. of Trustees of Univ. of AL v. Garrett, 531 U.S. 356, 367 (2001); see also Donahue v. City of Boston, 371 F.3d 7, 15 (1st Cir. 2004).  Semple's higher rank is in itself a rational basis for differential treatment.  Furthermore, under rational basis review, government decisions have a strong presumption of validity, and this presumption creates a substantial hurdle to the non-moving party, even at summary judgment.  See Medeiros v. Vincent, 431 F.3d at 29 (upholding government action under rational basis review at summary judgment).[3]

**IV. CONCLUSION**

Moran was an at-will employee who did not have a legitimate expectation of continued employment.  Without a legally-founded expectation in continued employment, she had no property interest in her employment to require due process.  Even if she had a property right, her pre-termination hearing afforded all the process that was due.  Nor did plaintiff successfully show that

---

[3] Given these findings, I do not have to address the question of whether the standard for equal protection cases involving a "class of one" is simply "irrational" or whether it also requires a plaintiff to demonstrate bad faith on the part of the employer, see e.g., Walsh v. Town of Lakeville, 2006 WL 1216463 (D. Mass, April 10, 2006).

her termination implicated her liberty interest or violated Equal Protection.  As a result, defendants' motion for summary judgment on all counts [document #27] is **GRANTED** and this case is closed.

**SO ORDERED.**

**Date:  September 27, 2006**          /s/NANCY GERTNER, U.S.D.J.